STATE OF IOWA, Appellee, v. J. E. McANINCH et al., Appellants.

**INDICTMENT AND INFORMATION**: Improper Joinder of Of-
1  fenses—Duplicity—Proper Procedure to Raise.  *Quaere* whether demurrer may be used to urge that the indictment (a) improperly joins several offenses in one count, (b) is duplicitous in pleading the alleged offenses, or (c) fails to allege facts sufficient to show that the court has jurisdiction to issue a warrant or try the defendants for any offense.

**INDICTMENT AND INFORMATION**: Improper Joinder of Offenses
2  and Defendants—Noncompliance with Code—Procedure.  *Quaere* whether contention that the offense charged cannot be committed jointly and that, therefore, there can be no proof of a joint offense, and hence no conviction of either defendant, is raised by (a) the claim that the indictment improperly joins two offenses and two defendants, and (b) a general allegation that it fails to comply with the requirements of the Code.

**APPEAL AND ERROR**: Briefs—Noncompliance with Rules—
3  Waiver by Court.  In instant case, noncompliance with Rule 53 (governing preparation of briefs), because of failure to set forth the "separate and concise, numbered, propositions relied on, with authorities", is not insisted on, the cause being criminal, and counsel being nonresidents.

**APPEAL AND ERROR**: Brief and Argument—Preparation—Failure
4  to Specify Points Relied on—Constitutional Question.  Appellant must set forth in his brief the "separate and concise propositions", with authorities, relied on as showing the unconstitutionality of a statute (Rules Supreme Court, No. 53). It is not sufficient that he raised the constitutional question in the lower court. In case of a complete disregard of this rule, the ruling of the lower court on constitutional questions will be approved.

**INDICTMENT AND INFORMATION**: Joinder of Defendants—Joint
5  or Several Conviction—Practicing Medicine Without License. Two defendants may be joined in the same indictment, and in the same count thereof, for a violation of Sec. 2579, Code, 1897, rendering indictable the act of "practicing medicine", etc.,

without having obtained a prescribed certificate. Such form of indictment will support a verdict of guilt of both defendants severally, of both jointly, or of acquittal of one and conviction of the other.

WEAVER, EVANS and GAYNOR, JJ., dissent.

INDICTMENT AND INFORMATION: Adjudicated Offense—Dismissal as Bar—Identity of Offense—Partial Identity of Time. On the question whether the dismissal of an indictment for a misdemeanor (§ 5539, Code, 1897) is a bar to another indictment, the test is not always "to ascertain the identity in character and effect of the evidence in both cases". In instant case, *held*, "identity of offense rather than partial identity of time" controlled.

PRINCIPLE APPLIED: An indictment was returned February 10, 1913, charging the practice of medicine without a certificate, etc., "*on or about Sept. 1, 1912*," and was later dismissed. A second indictment was returned October 16, 1913, charging the practice of medicine without a certificate, etc., "*on or about Oct. 4, 1913, and from that day to Oct. 16, 1913.*" *Held*, the dismissal of the first indictment was not a bar to the second, even though under the second indictment the three-year period (Secs. 5165, 5285, Code, 1897) covering the statute of limitation overlapped the like period under the first indictment.

*Appeal from Jasper District Court.*—HON. HENRY SILWOLD, Judge.

TUESDAY, OCTOBER 5, 1915.

SEC. 2579 of the Code defines one practicing medicine, surgery or obstetrics, and being a physician, to be a person "who shall publicly profess to be a physician, surgeon or obstetrician, and assume the duties, or who shall make a practice of prescribing or of prescribing and furnishing medicine for the sick, or who shall publicly profess to cure or heal." Sec. 2580, Code, is, among other things, that it shall be a misdemeanor for any person to "practice medicine, surgery or obstetrics in the state without having first obtained and filed for record" a prescribed certificate. The indictment at bar was presented on October 16, 1913, and charges that:

"The said J. E. McAninch and C. S. McAninch on or about the 4th day of October, A. D. 1913, and from that date

to the finding of this indictment, in the county of Jasper and state of Iowa, did wilfully and unlawfully assume the duties of a physician, and make a practice of treating persons afflicted with disease, and did then and there wilfully and unlawfully, publicly profess to treat, cure and heal persons afflicted with disease, by a system of treatment called 'Chiropractic', without first having obtained from the state board of medical examiners of the state of Iowa, and recorded in the office of the county recorder of Jasper county, Iowa, a certificate authorizing the said J. E. McAninch and C. S. McAninch to practice as such, contrary to and in violation of law.''

The defendants interposed a demurrer, which, they claim, asserts that the indictment charges an impossible offense, and is otherwise insufficient under our statutes. They also interposed a plea in bar, claiming that the dismissal of an indictment found earlier than the one at bar operates as a bar to prosecution under the last indictment. On the overruling of demurrer and plea, pleas of not guilty were entered, and a conviction ensued. From the judgment entered on the verdict, defendants appeal.—*Affirmed*.

*Morris & Hartwell* and *E. J. Salmon*, for appellants.

*George Cosson*, Attorney General, and *John Fletcher*, Assistant Attorney General, for the State.

SALINGER, J.—Demurrer can present only (1) that the indictment does not substantially conform to the requirements of the Code, and (2) that it pleads that which, if true, constitutes a legal defense or bar to the prosecution (Sec. 5328, Code). It admits of serious doubt, therefore, whether demurrer may be used to urge that the indictment (1) "Improperly joins several offenses in one count"; (2) is duplicitous "in pleading the alleged offenses"; (3)

1. INDICTMENT AND INFORMATION: improper joinder of offenses: duplicity: proper procedure to raise.

"fails to show or allege facts sufficient to show that this court, or any court, has jurisdiction to issue a warrant herein, or try these defendants for any offense at common law, or under the statutes of the state of Iowa, or at all."

The general allegation of noncompliance is not tenable. The others urge duplicity, and duplicity is not reached by demurrer. *State v. Abrahams,* 6 Iowa 117; *State v. Buck,* 59 Iowa 382; *State v. Brown,* 135 Iowa 40; *State v. Von Kutzleben,* 136 Iowa, at 96; *State v. Yates,* 145 Iowa 332.

Passing whether demurrer is the method, it is in serious doubt, at least, whether claims that the indictment improperly joins two offenses and two defendants, plus a general allegation that it fails to comply with the requirements of the Code, present that the offense charged cannot be committed jointly, wherefore, there can be no proof of a joint offense, and hence no conviction of either defendant.

2. INDICTMENT AND INFORMATION: improper joinder of offenses and defendants: noncompliance with Code: procedure.

Whether an "alleged error or point (which *is*) contained in this statement of points" may be considered here, unless amplified by an argument, is not involved. It is certain we need not consider a point that is made only by an argument *in extenso;* and the only point made on this head under the caption "Errors Relied Upon" is that "the defendants were improperly joined in the indictment". There is no reference to the indictment as a pleading in any "separately numbered propositions or points stated concisely, and without argument or elaboration, together with authorities relied on in support of them, under a separate heading of each error relied on."

3. APPEAL AND ERROR: briefs: noncompliance with rules: waiver by court.

4. APPEAL AND ERROR: brief and argument: preparation: failure to specify points relied on: constitutional question.

But we incline to resolve the doubt whether the point was sufficiently made below in favor of an application in aid of liberty, and to waive the rule as to presentation here—one intended to relieve us of the burden of ascertaining the point

in dispute by resort to long arguments—because of the importance of the questions presented, and because the argument for appellant seems to have been prepared by counsel practicing in another jurisdiction.

II. We are clear that it was right to overrule that part of the demurrer which presents that the statutes proceeded under are repugnant to the Bill of Rights, the Constitution of the United States, and the Constitution of the state.

III. It is a fair analysis of the position of appellants that (1) what they are accused of having done jointly cannot be done jointly, and therefore it is impossible to prove what is alleged; (2) proof that either did what is charged would not accomplish the proving of any joint act; and (3) where a joint act is charged, and the proof be but that either or all of the defendants did the act severally, there can be no legal conviction of either or both under the joint indictment.

5. INDICTMENT AND INFORMATION: joinder of defendants: joint or several conviction: practicing medicine without license.

The ultimate proposition is that upon these premises it is apparent, upon the face of the indictment, that any trial had thereunder must end with a fatal variance between plea and proof.

While isolated sentences in argument and loose words in authorities relied upon convey the idea that the indictment is defective because it charges an impossible offense, they are, instead, merely an argument for the conclusion that this indictment is one under which no effective trial is possible. The consideration of this contention involves, (1) whether a joint commission of the offense charged *is* impossible; (2) whether two may not be properly charged with the joint commission of it, even though two cannot (physically) jointly fail to procure and file a certificate, and whether, even though the offense charged cannot be committed jointly, it follows that because the charge is joint both must be acquitted, should the evidence show that one alone was guilty, or that both are, independently, guilty.

1.

It is true there are some cases for the proposition that some acts cannot rightly be joined in an indictment. It is equally true that some of these do not hold to the rule unqualifiedly, and, so far from attaching to such joining the consequence that all indicted must be acquitted without reference to what the proof of several guilt is, hold such misjoinder can be obviated and corrected. It may be granted, for the sake of argument, that a few of these first few hold that upon such misjoinder such consequence follows; but we believe these do not voice the weight of authority, and to a certainty do not announce what is now the law.

*United States v. Kazinski*, Fed. Cases, No. 15,508, holds, without more, that several may not be joined in an indictment for violating a statute which prohibits defendant to "enlist or enter himself as a soldier in the service of a foreign prince".

Without discussion or the citation of authority, *Vaughn v. State*, 4 Mo., at 536, declares that two can no more be jointly guilty of exercising the trade or business of an auctioneer without license than be jointly guilty of speaking slanderous words. Let it be said, in passing, that while we once inclined to the opinion that slanderous words could not be jointly spoken, we have receded from that position—and, as will be seen, we are not alone in the position into which our receding puts us.

*State v. Lancaster*, 36 Ark. 55, applies the rule to a charge of uttering vulgar and profane language and making violent threats. It cites *State v. Roulstone*, 3 Sneed (Tenn.) 107, which so rules as to the uttering of obscene and vulgar words. We think it will presently appear that the Supreme Court of Tennessee has receded from the principle involved in thus deciding. Both the *Lancaster* case and the *Roulstone* case modify the strictness of the position taken with a concession that using different counts is a cure.

*Commonwealth v. McChord,* 2 Dana (Ky.) 242, involved an indictment for obstructing a highway, preferred against three abutters owning separate parcels of land, and wherein each of the three had extended his fence upon it, each in a different place, but all within the boundary designated in the indictment. The ultimate decision is that a joint indictment against these cannot be maintained. This is done after asserting that the indictment would be good if it had charged each offender severally, and could, in that event, be maintained against all of them; that the omission of words such as "severally" or "separately" is neither fatal nor material; that verbal exactness and the technical strictness of old times are not now required in indictments (a statute rule in Iowa, Code Sec. 5290); that common sense is now the common law in criminal as well as in cases purely civil; that, where the offenses are all of the same kind, admit of the same plea, the like judgment, and are subject to the same punishment in kind, even though in different degrees, one indictment charging the offenders severally may be maintained against all. It will be seen that the case, therefore, enforces the strictness of rules once prevailing, while professing that their observance is no longer required.

In *State v. Deaton,* 92 N. C. 788, the rule contended for by appellants is applied to a joint indictment for being drunk. The argument is that this should be done because such rule is applied as to slanderous words spoken simultaneously by several, to uttering obscene and blasphemous words, perjury, and sedition. But the case points out, and does not disaffirm, that some authorities hold there may be a conviction on such indictments if they be charged *separaliter* —a mere needless form in this jurisdiction.

In 1 Chitty, Criminal Law, star page 270, it is said that if four are joined for erecting four inns which prove common nuisances, and so for keeping disorderly houses, inserting the word "severally" will make the charge several as to each

person impleaded. The same author, at the same place, asserts that if on trial the evidence affects the defendants differently, the judge may select what is applicable to each and leave the cases separately to the jury; that the indictment may in discretion be quashed if any material inconvenience appears to arise from the mode in which it is preferred. And this is the holding of *State v. Nail,* 19 Ark. 563, and *Lewellen v. State,* 18 Tex. 538.

In 1 Bishop on Criminal Procedure (Ed. of 1866), Sec. 223, *King v. Kingston,* 8 East. 41, per Lord Ellenborough, and *Johnson v. State,* 13 Ark. 684, it is recognized that, for the sake of convenience, the court may in judicial discretion interfere if distinct offenses are jointly charged. But these hold that, as substantive law, if the indictment is joint and only one defendant be put on trial, he may not object; and if it appear in proof that he was the only one concerned in the commission of the offense, there may be verdict and judgment against him as though he were indicted alone.

*State v. Wainright,* 60 Ark. 280, does not seem to be very controlling on this controversy. It merely remarks that certain persons indicted for failing to work on the public road were improperly joined in the same indictment, because the failure of each of them to work or pay money in lieu of labor was a separate and independent offense. It seems that no objection to the joinder was made, and all three defendants were acquitted. The decision does not turn on the joinder; there is no attempt beyond this remark to decide the question, and no discussion of the point beyond this remark; and the appeal of the state was affirmed as to the acquittal of two and reversed for the acquittal of the third.

The foregoing is an analysis of the cases cited for appellant, and of others found by independent investigation; and we believe from such examination that these comprise substantially all that may in reason be urged to sustain the appellant in whole or in part.

2.

Now, on the contrary, it has been held that a joint indictment will lie for assault and battery on part of each defendant upon the other, and at the same time (*State v. Lonon*, 19 Ark. 577); against two persons for assault or battery on three (*Fowler v. State*, 59 Tenn. 154); against two as principals in the commission of rape (*Dennis v. State*, 5 Ark. 230); against three for sodomy committed on the same man at the same time (*Foster v. State*, 1 Ohio Cir. Ct. 467); for unlawfully fishing in a pond at the same time, from the same boat, though each was fishing on his own account (*Commonwealth v. Weatherhead*, 110 Mass. 175); for having counterfeit notes in possession (*Hess v. State*, 5 Ohio 5); for violating the act to prevent illegal banking (*State v. Presbury*, 13 Mo. 342); against two persons composing a partnership, for making and signing, in their partnership name, a false return to the assessor of internal revenue (*United States v. McGinnis*, Fed. Cases 15,678); that husband and wife may be jointly indicted for keeping a bawdy house (*State v. Bentz*, 11 Mo. 27); that there may be joint indictment in a single count for engaging in the business of retailing drugs without a license (*State v. Forcier*, 65 N. H. 42, 17 Atl. 577); that two may be jointly informed against for selling liquor without a license (*Commonwealth v. Harris*, 7 Grat. (Va.) 600); and that two or more may be jointly guilty of being common sellers of wine and spirituous liquors without being first licensed as such according to law, and may be jointly indicted for that offense (*Commonwealth v. Tower*, 49 Mass. 527; *Commonwealth v. Sloan*, 58 Mass. 52). See *Coates v. People*, 72 Ill. 303.

3.

At one time it might fairly have been claimed that the rule invoked for appellants prevailed in this jurisdiction. But, as will presently be seen, this is no longer so. Without any special discussion or a citation of authority, and in fact

without its being more than collaterally involved, we said in *Hinkle v. Davenport,* 38 Iowa 355, that a joint action for slander cannot be maintained, and that if the same slanderous words be at the same time spoken of several parties, each must seek a separate remedy.

In *Cogswell v. Murphy,* 46 Iowa 44, we held that a joint action for trespass and damage by stock cannot be maintained against the several owners of the stock, and where such action is thus brought, advantage may be taken of misjoinder of parties, by answer and motion in arrest.

*Bort & Baldwin v. Yaw,* 46 Iowa 323, decides that a joint action cannot be maintained against a common defendant by two parties who have distinct and separate causes of action, neither having any interest in the cause of action of the other. This case, however, somewhat weakens the *Hinkle* decision by ruling that in the last named case the result there reached might have been avoided by an amendment striking out the name of one of the parties, or dismissing the action as to one.

In *Barnes v. Ennenga,* 53 Iowa 497, the appellant assigned error that the court erred in rendering a joint judgment. We hold that where the petition simply avers a joint tort, there is no misjoinder, and that hence the assignment made does not raise the question whether it is a fatal variance to allow a judgment against one defendant upon allegation of a joint tort. Though so holding we *said* that:

"The error, if any, of the court did not consist in rendering a joint judgment, but in rendering any judgment at all. A joint tort having been averred, it was incumbent upon the plaintiffs to show a joint tort. If that failed, no judgment of any kind should have been rendered."

It is plain that these words express no binding decision, and we so hold in *Boswell & Tobin v. Gates,* 56 Iowa 144, wherein we say that an examination of the Barnes opinion

"will show that this was said upon a point not raised, and not necessary to the decision." While it concedes the remark in the *Barnes'* case to be unobjectionable in a case like that of *Cogswell v. Murphy,* "it is not to be approved as an unqualified proposition, and in no view can it be regarded as authority."

For itself, the *Boswell* case decides that, in an action to recover for a tort in which two are joined as defendants, and wherein it is alleged that the tort was committed by them jointly, verdict that it was committed by one defendant alone may lawfully proceed to judgment against that one defendant.

*Lull v. Anamosa Nat. Bank,* 110 Iowa, at 544, also calls attention to the fact that the *Boswell* case has modified the Barnes decision. The *Lull* case cites the *Boswell* case, and holds, first, that a misjoinder must be taken advantage of by motion or be waived, and then proceeds to say:

"If plaintiff maintains his action against one of several defendants, he may have judgment against that one, and the other defendants may have judgment against plaintiff for costs. The rule is alike applicable to actions *ex contractu* and *ex delicto.*"

IV. On analysis, it will be found the great weight of authority deals with this proposition on the simple theory that two equals two times one; that an accusation that A and B committed a murder is, in logic, equivalent to asserting that A committed murder and that B did, and that, therefore, B may not escape because A proves innocent. And, as we put it in one of our earlier cases, an argument is not persuasive whereby "defendant seeks to escape not for the reason that he did not use a deadly weapon, but because he did not use all the weapons." *State v. McClintock,* 1 G. Gr. 392.

As to an indictment charging that A and B sold spirituous liquors unlawfully, it was held that evidence was admissible of sales by A alone, and that this constituted no variance;

because, says the Supreme Court of Connecticut, in *State v. Wadsworth,* 30 Conn. 55, 57, the indictment "is to be taken and understood distributively as against each of the accused severally, as well as jointly against both of them"—that is, A sold it, and so did B.

In *Griffin v. Mills,* 39 N. J. Law, page 587, it is held that several may be jointly tried for being common thieves, upon the theory that, if the offense be conceded to be several exclusively, the allegation that several committed the act is, in substance, equivalent to stating that each of them did it.

In 1 Chitty, Criminal Law, star page 271, it is said: Except a case like conspiracy and riot, where one alone cannot be guilty, and the acquittal of all others renders it impossible for the one remaining to have committed the offense charged, the joint charge is several against each individual, and the jury may acquit some while others are found guilty; and, at page 270, that, in an indictment for burglary and larceny against two, one may be found guilty of the burglary and larceny and the other of larceny only.

On an indictment against two for being common sellers of intoxicating liquors "in a building then and there used by them as a shop", it was held in *Commonwealth v. Brown,* 78 Mass. 135, that one may be convicted. The exact point made was, "that, the offense being charged against both defendants jointly, in a place kept by both jointly, one could not be convicted without proof that the building was kept by both, as alleged in the indictment." In overruling this contention, the Supreme Judicial Court of Massachusetts said:

"It is a well-established principle in all cases, civil as well as criminal, that a charge in tort against two is several as well as joint against all and each of them. All or part may be convicted, and all or part may be acquitted."

In *Rush v. Commonwealth,* (Ky.) 47 S. W. 585, the charge was that more than one committed the offense of selling

liquor, and it is held that this "does not compel the prosecution to prove that both are guilty jointly, but is like any other crime charged to two,—either may be convicted without the other."

In *State v. McClintock*, 8 Iowa, at 206, as to a joint indictment charging two with having assaulted two jointly, it is held that an instruction was rightly refused that there could be no conviction of either defendant because the proof showed that each separately assaulted the two persons named, and we said: "For it is a general rule that when two are supposed to be jointly guilty of an offense, they may be indicted jointly or severally, and in either case, one may be found guilty."

Our own statutes (Secs. 5299 and 5300, Code), and our construction of them (*State v. Smith,* 100 Iowa 1; *State v. Dunn,* 116 Iowa, at 226; *State v. Leonard,* 135 Iowa 371) strongly indicate a leaning toward the foregoing views. Sec. 5289, Code Sup. 1913, provides that an indictment is (for present purposes) sufficient, if so worded as that the court is able to pronounce judgment, according to law, upon a conviction. That it was in contemplation of the legislature that joint charging should not interfere with ability to pronounce judgment, is indicated by Sec. 5284, Code, that the indictment may charge the several offenses, and defendant may be convicted of any offense included therein; Sec. 5384, Code, that "upon an indictment against several defendants, any one or more may be convicted or acquitted"; and by Sec. 5408, Code, that "On an indictment against several, if the jury cannot agree upon a verdict as to all, it may render a verdict as to those in regard to whom it does agree, on which a judgment shall be rendered accordingly, and the case as to the rest may be tried by another jury." And we hold in *State v. Hunter,* 33 Iowa 361, that, while defendants jointly indicted may, in the discretion of the court, be tried jointly or separately, a separate judgment must be entered against each, though jointly tried.

V. Concede, for the sake of argument, that, literally, two men may not be jointly guilty of practicing medicine without first obtaining and recording a certificate required to make the practice lawful. It is still possible that one might aid and abet the other in this violation of law—that defendant B, knowing A was practicing illegally, did represent, actively, that this was not so, urged patients to come to A, and actually helped him in carrying on the unlegalized practice. Now since our statute provides that, for the purposes of indictment and trial, the accomplice is to be dealt with as a principal, this indictment is sustained by very many well-considered authorities upon the theory that, even if the proof shows that A violated the law, and that B aided and abetted, an indictment charging both to have violated the law is valid.

*Cox v. State*, 76 Ala., at 68, one of those holding that there cannot be a conviction of several on joint indictment for the use of abusive, insulting and obscene language, strongly intimates that if one procured another to use such language, it would present a case of joint criminality.

*State v. Nichols*, 12 Rich. (S. C.) 672, maintaining the rule for which appellants contend, in a case wherein one defendant claimed a hog and marked it, and two others were claimed by another of the defendants and marked by him, said, "Though a joint conviction cannot be supported in that case, it would be different had there been concurrence in the separate acts."

Though the ultimate conclusion of the *McChord* case, *supra,* is against ours, it yet recognizes that an accomplice may be treated as a principal, in that it affirms that the test whether an offense be joint or several is ascertaining whether each offender be guilty in some degree of the same crime, in which event any one may be separately convicted, although the others are the actual perpetrators, and that, if each may be so convicted, their guilt is joint.

In 1 Chitty, Criminal Law, star page 270, it is said that "if money or goods be obtained upon false pretenses, all who

are present, aiding, may be included in one indictment. And if the crime arise out of the same act, though the parties stand in different relations, they may be joined in the same indictment. Thus if a wife join with a stranger in the murder of her husband, they may be prosecuted together, though the wife is guilty of petit treason, and the stranger of murder only, and in that case the indictment may conclude that they 'feloniously, traitorously, and of their malice aforethought, did kill and murder', which will be good for both of them, applying to each their appropriate terms. So, several present at the death of a man may be charged with different degrees of homicide in the same indictment; thus if A with malice abet B, who gives the blow without malice, it is murder in the former and but manslaughter in the latter, and thus it may be stated in the proceedings.''

In *State v. Zeibart,* 40 Iowa 169, two were charged with murder, the necessary wilful intent being alleged, and it is held that on this joint indictment for murder it is not necessary that the indictment be distinguished between the principal and the accessory, where both are charged with intent to kill. It is said, further, there is nothing in the indictment or testimony tending to show that either was only an accessory, and that it is deemed unnecessary that the indictment shall charge which defendant held the knife. See *Coates v. People,* 72 Ill. 303.

In *State v. Comstock,* 46 Iowa 265, we said that an indictment of two persons jointly for rape is not bad on the ground that it is not susceptible of being committed jointly, as one of defendants may have been present, aiding and abetting, which, under the Code, would warrant indicting him as a principal. And in *Foster v. State,* 1 Ohio Cir. Ct. 467, an indictment against three men for sodomy committed on the same man at the same time is held good, because one could have done the act and the others aided him.

The cases rest, and our statutes were made, in recognition of the fact that, in a literal sense, a joint offense is a

practical impossibility; that two hands cannot inflict the same mortal wound nor two physically participate in an act which constitutes rape—rest upon appreciation that joint guilt always includes the guilt of each participant—proceed upon the theory that joint guilt is usually the act of one and the aid of another. Either reason is so sound that it is not material which one or more have put the great weight of authority, and our own statutes, behind the rule that no guilty one shall escape because the proof fails of showing that another was also guilty.

The indictment is good.

## DIVISION II.

I. In Bishop's Criminal Law, Sec. 1053, a rule is stated thus:

6. INDICTMENT AND INFORMATION: adjudicated offense: dismissal as bar: identity of offense: partial identity of time.

"The test is whether, if what is set out in the second indictment had been proved under the first, there could have been a conviction. When there could, the second cannot be maintained; when there could not, it can be."

12 Cyc., page 280, point B, citing cases from Arkansas, Colorado, Connecticut, Georgia, Hawaii, Illinois, Indiana, Kentucky, Louisiana, Massachusetts, Mississippi, New York, North Carolina, Ohio, Pennsylvania, South Carolina, Texas, and the Supreme Court of the United States, says:

"A test almost universally applied to determine the identity of the offenses is to ascertain the identity in character and effect of the evidence in both cases. If the evidence which is necessary to support the second indictment was admissible under the former, related to the same crime, and was sufficient if believed by the jury to have warranted a conviction of that crime, the offenses are identical and a plea of former conviction or acquittal is a bar."

*State v. Webber,* 76 Iowa, at 689, recognizes this rule, and holds it to be inapplicable to the *Webber* case.

Is this rule applicable to the case now in consideration?

No case is found wherein the rule that the mere possibility of introducing the same evidence to sustain two indictments will bar prosecution under the last has been applied where the last indictment begins to charge at a point of time later than any covered by the first. The utmost cited is that this rule is applied where the second indictment is not so restricted in terms as to exclude testimony of all acts during the period covered by the first indictment. Or cases wherein the identical fact upon which the second prosecution rests was upon evidence actually adduced at the first hearing found against the state. Or wherein the second prosecution relies upon some act which was so closely connected with one tried before as to be the creature of the same impulse. Or where there is a merger of all acts preceding the finding of the indictment because, for instance, acts are, in several indictments, charged to have been committed during January, February and March of a given year, and there is trial and acquittal upon the indictment covering March.

The dismissed indictment, urged as a bar, was found on February 10, 1913, and charges that the acts complained of were done "on or about September 1, 1912". The indictment at bar was found on October 16, 1913, and charges that the acts complained of were done "on or about October 4, 1913, and from that date to October 16, 1913". So far as the face of the indictments goes, the last does not include, and confines itself purely to, an accusation that like acts were committed later than any time covered by the first. This is material on whether some of the cases relied on for appellants are applicable.

With most laborious search, we have been unable to find any case wherein the two indictments involved were, in this particular, either in form or in substance like the two involved in this appeal. Indictment No. 1 complains of acts done "on

or about September 1, 1912''. No point of time as early as, or earlier than, September 1, 1912, is mentioned in the last indictment; for that expressly avers that what is complained of was done ''on or about October 4, 1913'', coupled with a statement which is fairly open to the construction that the accusation starts with October 4th—that the acts complained of were done then and from then on, to wit: ''From that date to October 16, 1913'', and not earlier than October 4th.

In *Commonwealth v. Dunster* (Mass.), 13 N. E. 350, the first indictment charges from August 1st to October 4, 1886. The second starts earlier than August 1st, to wit, on May 1st, and ends later than October 4, 1886, to wit, on November 17, 1886. The last includes all of the first, and more at both ends. It is held the prosecution could not, in effect, amend this indictment by remitting so much thereof as covered the duplicated period, by remitting all unlawful acts prior to October 5, 1886, a period covered by both indictments.

In *Commonwealth v. Robinson,* 126 Mass. 259, the first indictment covers from January 1, 1878, to May 28, 1878; the second begins where the 'first does, on January 1, 1878, and runs beyond the period named in the first, to wit, to August 20, 1878, from which it appears that the entire period of the first, and more, is, in terms, covered by the second.

In *State v. Brownrigg* (Me.), 33 Atl. 11, the first indictment is, in terms, confined to the month of October, 1893. The second begins with the same month and goes to April 14, 1894, and, therefore, begins when the first does, covers all the time named therein, and more. Whatever, then, may be said for the claim that, where the charging part of the last indictment includes time charged in the first, the second is barred because proof receivable in the second would have sustained the first, the cases just analyzed do not go beyond sustaining this precise claim, and are authority neither way upon what the rule is where the words of the last deal with nothing but a period beginning subsequent to the period named in the first.

In *State v. Webber,* 76 Iowa 686, keeping a place with intent to sell liquors therein, unlawfully, the first indictment begins with July 1, 1885, and covers divers days between that day and April 6, 1886; the second indictment begins later than the first, to wit, on April 9, 1886, and charges the act to have been committed on divers days between that and a later period than was named in the first, to wit, June 23, 1886. 'The case recognizes the existence of this rule of evidence, but holds it to be inapplicable because, between the finding of the indictments, the penalty was repealed, and a new one substituted. Whatever may be thought of the persuasiveness of the reason given for holding that the rule is inapplicable, the case is, at best, authority for no more than that the rule is *not* applicable when the sentence under each of two indictments may differ. It gives no light on when the rule *is* applicable.

2.

It may be gainsaid that in *State v. Waterman,* 87 Iowa 255, language is used to the effect that any act may be used to sustain an indictment, without reference to the allegation that it was committed on or about a specific date charged, so long as the time does not go beyond the period of the statute of limitations; and to the further effect that the test is whether the last indictment can be sustained not only by evidence that *did* sustain the first, but by evidence which '*might* have sustained the first had it been adduced.

The difficulty is that, while the case *might* have been decided upon the ground that it was possible to sustain either indictment by acts done within a time common to both, it actually determines nothing except the effect to be given to the actual evidence adduced on the first trial. Whatever is *said*, the question of what effect the mere right to put in evidence has is not in the case by way of decision. The essence of it is that the evidence in the case last tried shows

that an obstruction was originally placed in an alleged highway in 1887, or prior thereto, had remained there ever since, and constituted the very obstruction on which both indictments were based. It is further found that on the first trial the jury acquitted because the alleged highway had no legal existence. This is all made plain by such statements as this:

"The first case involved the question of the existence of the highway, the verdict of the jury in that case, of necessity, determined that the highway did not exist, and that fact cannot be again inquired into in another criminal action."

The material allegations of the two indictments are the existence of the highway and its obstruction by the defendant.

"It is clear, then, that the former trial directly involved the question of the existence of a legal highway and the obstruction of that particular highway by the defendant."

In other words, we hold that, where it is found in one trial that no highway exists during a certain period, defendant may not be again tried for obstructing, because at a later time the same obstruction remains in what is still not a legal highway.

In *State v. Blodgett*, 143 Iowa, at 588, the *Waterman* case is construed to hold that "both indictments charged the obstruction of a highway, and acquittal of the first was on the ground that there was no highway to be obstructed; and this was held to bar the second prosecution."

In *State v. Ingalls*, 98 Iowa, at 729, we say this of the *Waterman* case:

"While the defendant in that case was twice indicted, yet each presentment was for the same offense, to wit, that of obstructing a highway; and the evidence adduced conclusively established the fact that it was the same highway, and the same obstacle which it was claimed constituted the obstruction

to the highway in each case. It was also shown that the indictments covered, in part, at least, the same periods of time. On such a state of facts, we held that an acquittal in the one case was a bar to the prosecution of the other."

Distinguishing the *Waterman* case, or, perhaps, making a substantive rule of its own, the *Ingalls* case points out that the question is not whether the same evidence is admissible on both indictments, but whether the evidence that will sustain one is necessary to sustain the other. That is to say, though an act done within the overlapping period might, if used, avail to sustain either indictment, this possibility does not control as to acts in a period subsequent to the overlap. For, while the state had the power to use any act in the duplicated period to sustain either indictment, it might prove the second indictment without resorting to any act within the duplicated period.

In *Watson v. Richardson,* 110 Iowa, at 700, the *Waterman* case is cited for this proposition:

" 'An adjudication by a competent tribunal is conclusive, not only in the proceeding in which it is announced, but in every other where the right or title is the same, although the cause of action may be different.' The very right to recover is based on precisely the same ground in both actions. It is not essential that the causes of action be the same. The right or title on which they rest must be."

Something is said in *State v. Price,* 127 Iowa, 301, 309, which gives color to the contention for appellants. But a careful consideration of the case shows that identity of offense rather than partial identity of time controls. The real holding of the *Price* case is:

"It was said (in the *Waterman* case) that under the provisions of the statute to which we have referred the acquittal under the first indictment was a finding that there was no

highway which the defendant could obstruct; that this finding was conclusive, and could not be again inquired into in the same kind of a criminal action.''

This is decisive of the *Price* case, because the two crimes are of the same general nature, both being sexual crimes, and involving unlawful knowledge, and, ''as the offenses are of the same nature and species, the rule announced in *State v. Waterman* must govern, and unless we overrule that case we must reverse this.''

In an elaborate dissent, written by Mr. Justice McClain, and concurred in by Mr. Justice Sherwin, it is insisted that the true rule is, ''that the second prosecution will be barred only where the transaction for which defendant has once been prosecuted is the same as that for which he is proceeded against on the second prosecution, or at least involves the same acts. That identity of transactions is the controlling consideration is the rule of the greatest number of cases, especially of the modern cases''—and a number of authorities are cited.

Construing the *Price* case, we held, in *State v. Norman*, 135 Iowa, at 487, that by reason of its holding, an acquittal of the larceny of domestic fowls from the premises of one is not a bar to a prosecution for the larceny of different fowls from the premises of another—that the bar must rest on identity of offense.

### 3.

The controlling factor in other cases is the doctrine of merger and the reasoning that, where a single impulse repeats a given act, the offense is continuous, that there may not be indictments for each constituent act, and that a prosecution absolves from all that went before. This is the holding in *Smith v. Smith*, 79 Ala. 257, in a case where defendant, while visiting a neighboring plantation, and inviting the residents to a dance, exhibited a pistol at two houses, some 50 or 60 yards

apart, and was tried and either convicted or acquitted on the testimony of the persons at one of the houses—it being held that he could not again be prosecuted ón the testimony of the persons who saw him at the other house on the same day.

In *State v. Eggleshi*, 41 Iowa 574, we say it is the decided weight of reason and of authority that where defendant, by one muscular action, and one volition, passes to the same bank four forged checks, and procures them to be placed to his credit, he commits one crime, and not four, and that a convic- tion for uttering one of the checks bars a conviction upon the others.

In *Jones'* case, 1 Q. B. (1893) 89, this rule is applied to a case wherein an apothecary, forbidden to act without license, and having none, supplied medicine to three different persons on the same day.

We said in *State v. Sterrenberg*, 69 Iowa 544, that where one is acquitted on charge of illegal selling of liquor, and the trial proceeds upon the understanding that all offenses up to the time covered by the information are included, a second information charging the sale of such liquors cannot be sus- tained by evidence of sales during the time covered by the first information.

In *State v. Nutt*, 28 Vt. 602, it is held that, on indictment for being a common seller of liquor, a conviction conclusively bars all isolated acts making proof of the ultimate charge, which occurred prior to the indictment.

In *McWilliams v. State*, (Ga.) 34 S. E. 1016, this rule is applied squarely to a second indictment for illegal liquor selling, which lays a time prior to the finding of the first.

Several cases relied on for appellant's contention are governed by this doctrine of merger.

In *United States v. Burch*, 1 Cranch C. C. 36, it is said:

"The keeping of a disorderly house is a single offense, and one conviction is a bar to a prosecution for keeping a dis-

orderly house at any time prior to the finding of the indictment.''

In *Freeman v. State*, 119 Ind. 501 (21 N. E. 1101), keeping a house of ill fame is involved. The first indictment declares on acts done on January 9, 1889; the second, on acts of February 11, 1889. There was a conviction on the one covering the later date, and it is held that this barred prosecution under the indictment covering the earlier date.

In *State v. Lindley*, 14 Ind. 430, gaming is charged. The first indictment runs from July 28th to November 27, 1858; the second begins on July 27, 1858, and charges that the act was done on July 27, 1858, and on several days prior thereto. Trial on the last is held to have barred the earlier period covered by the first, remaining untried.

In *Ex parte Snow*, 7 Sup. Ct. R. 556,—unlawful cohabitation,—three indictments were presented on the same day, to wit, December 5, 1885. No. 742 was tried first—it covers between January 1, 1885, and December 1, 1885; 743 was tried next—it covers all the year 1884; 741 was tried last, and it covers all the year 1883. It is held that trial and conviction of the one covering all of 1885 barred prosecution for the same continuous act of unlawful cohabitation committed during the two prior years of 1883 and 1884 .

In *Wilson v. Commonwealth*, (Ky.) 82 S. W. 427—practicing dentistry without a license—three indictments were returned simultaneously, each covering "one year prior to November 19, 1903." The three are alike, except that a different patient treated is named in each. It is held that a conviction on the one of these first tried bars prosecution on the other two.

In *Cawein v. Commonwealth*, (Ky.) 61 S. W. 275—maintaining a common nuisance—four indictments were simultaneously returned, on July 13, 1898. No. 1 covers from March 13, 1898, to April 30th; No. 2 runs from April 30th to May 31st; No. 3, from May 31st to June 30th; and No. 4, from June 30th to July 13th, the day on which the four indictments were re-

turned. The four cover a continuous period of 112 days. There was a conviction on the one covering the last 14 days of this 112, and it is held that prosecution on the one covering the first 31 days of the 112 is barred. Aside from the manifest application of the doctrine of merger, this decision is put also upon the ground that the offense was continuous; that the house was operated continuously, and by the same methods, during the whole time covered by the four indictments, without any change in its furnishings, or the mode of doing business, and was never vacant; that it was clearly intended to be a continuous act from the time the house opened; and that at no time was a new impulse given; and that, therefore, the state could not arbitrarily split up a continuous offense and make what was done in April one offense, what was done in May a second, and so on. All of it amounts to decision that, where an ultimate offense consists of distinct and successive acts, the prosecution bars everything preceding an indictment upon which it gets a conviction, and that a continuous offense may not be punished by continuous indictment covering distinct acts involved in the continuous offense, and committed earlier than a conviction for that continuous offense.

This, too, settles nothing for this controversy.

II. We do not understand just what appellants claim for their statement that "The difficulties under the second indictment could have been readily obviated by the county attorney by confining the practice to the treatment of certain persons between certain specified dates or by an indictment similar to the one at bar, but charging the offense as between certain specified dates." It seems to us that is precisely what the state did do in the second indictment.

The first indictment against these defendants was found on February 10, 1913, and charged them with acts committed "on or about September 1, 1912". The second indictment, the one now in hearing, was found October 16, 1913, and charges acts committed "on or about October 4, 1913, and from that day to October 16, 1913". So far as its terms go,

the second indictment deals with a period wholly later than and embracing no part. of the period covered by the first indictment, urged as a bar. The statute upon which the appellants rest themselves creates nothing through dismissal of an indictment except a bar to another prosecution ''for the same offense'' (Sec. 5539, Code). Something more than the possibilities of enlarging the date in the indictment by the proof should be needed to prove that the last indictment covers ''the same offense as did the first''. On the face, an act charged to have been committed on or about September 1, 1912, is not the same offense as one committed ''on or about the 4th of October, 1913, and from that date to the finding of this indictment''—October 16, 1913.

If more care had been used in making and applying the salutary rule which makes time immaterial so long as the proof does not go back of the statute limitation period, there would be no difficulty now. The rule was formulated to obviate farcical miscarriages of justice—escapes of those clearly shown to be guilty, because, forsooth, the prosecutor had charged the offense to have been committed on the third day of a September, and the proof showed it was done on the second day of that month—a variance that all care might not be able to guard against and which could have worked no prejudice to the accused. But the fact that there are cases in which it is right to apply this rule never proved that an act charged to have been done on or about a named day, and during specified days from and after that day, might be sustained by evidence of acts done at any time within three years *earlier* than the named day. The rule that is intended to make harmless variances harmless, rightly understood, never was nor could be used to treat an allegation that a thing was done on and after a day named as being the equivalent of a charge that it was done on the named day or earlier—precisely what must be held if the dismissed indictment is to bar the one in hearing, and on the ground that evidence admissible on the first will sustain the last. We think it does violence to no proper application

of the rule which allows enlargement of time pleaded by proof, to hold that an indictment which lays time on or about September, 1912, cannot be sustained by acts done "on or about October 4, 1913, and from that date to the 16th day of October, 1913".

Just that is ruled by *Fleming v. State*, (Tex.) 12 S. W. 605, which deals with some eighteen indictments for keeping a disorderly house, all returned on March 9, 1888. The defendant was convicted for keeping the house, under an indictment charging February 1st to February 29, 1888, and it was held that this was no bar to prosecution under one charging "from October 22nd, and each day thereafter, on to October 28, 1887", on the ground that what the case terms a rule well settled in criminal cases applies, to wit, "that when a continuing offense is alleged to have been on a certain day, and on divers days and times between that and another day specified, the proof must be confined to acts done within the time." The same general position is taken in *Commonwealth v. Connors*, 116 Mass. 35. There were two indictments, the first of which alleged keeping of a tenement for improper purposes on July 1, 1872, and on divers other days and times between that date and May 1, 1873, and the second, the keeping on May 1, 1873, and on other days between that and June 12, 1873. It is held that the last was not barred by the first because there was no single day common to both indictments,— the last indictment being substantially like the one at bar, not only in language, but in that it deals wholly with a period beginning where that covered by the first indictment ends. Any other view must, or at least may, result in giving to any who are charged with a continuous offense, and against whom the indictment is dismissed, a license to commit anew the offense charged in the dismissed indictment.

In *Commonwealth. v. Respass* (Ky.), 50 S. W. 549—a case of four indictments—the ultimate holding is that nuisances, when distinct impulses are given at intermittent, successive

times, may be the object of successive prosecution, and it is said:

"It appears that appellee's business was only operated in the afternoon from about 2 P. M. to 5 P. M. each day; that he had 15 or 20 employes there daily to wait on the crowd; that about 175 or 200 people would meet there every afternoon in this way, except on Sunday, and engage in betting on horse races. The court cannot see that this was the product of a single impulse, and, when the commonwealth elected to confine each indictment to certain limits of time, the proof should be confined to the period so specified, and a conviction under an indictment for one period is no bar to an indictment for a different period."

It is said in the *Cawein* case, *supra*, "If, after the indictment is found against him, the defendant continues to maintain the nuisance, he may be subsequently indicted for its continuance after the finding of the former indictment; for proof of this could not be used to secure a conviction under that indictment, and prosecution for an offense cannot operate as a license to continue it. The state has, therefore, an adequate remedy for the suppression of such offenses without splitting them up in different prosecutions, all begun at the same time."

In *State v. Ingraham*, 96 Iowa, at 281, two indictments for keeping a liquor nuisance are involved. On September 8, 1893, defendant was indicted for the same offense charged in the second indictment, and after trial acquitted. The acquittal is held to be no bar because: "There is sufficient testimony in the record, however, to justify his conviction for keeping a nuisance, after that date, and his plea of former acquittal is no defense to acts transpiring after the return of the former indictment." And see *State v. Morgan*, 155 Iowa, at 483, and *State v. Witham* (Wis.), 35 N. W. 934.

12 Cyc., page 281, says: "But where a continuous offense

is charged between specified dates, if any portion of the time covered by the indictment has been used on or applied under a former indictment, and has resulted in a conviction, the former conviction is a bar.'' But cases cited in support are *State v. Dunston*, 78 N. C. 418, and *Commonwealth v. Markley*, 5 Pa. Dist. 134, which hold, contrary to our *Morgan* case, 155 Iowa 482, that a conviction for the abandonment of a wife bars a subsequent conviction for the same abandonment, although prolonged beyond the first, because the whole of the continuous, unbroken abandonment is one offense.

III. By almost inevitable inferential deduction, the class of cases—of which one that considers whether a presentation for conspiracy bars one for the crime which is the object of the conspiracy is a type—refutes any claim that the mere possibility that the evidence which sustained one indictment is usable to sustain the other operates as a bar in either.

In *State v. Crofford*, 133 Iowa, at 481, it is determined that the commission of a crime and a conspiracy to commit that crime are distinct offenses, and that, therefore, conviction of one is no bar to prosecution for the other. But while a conspiracy to commit an offense may be established although the object of the confederation is never accomplished, it is manifest that the mere commission of a crime by several might be attended with such circumstances as to prove as well that the defendants had conspired to commit the substantive offense; and that, therefore, conviction or acquittal of a specific crime should operate as a bar to prosecution for the conspiracy involved,—if it be law that one prosecution bars another,—where both *might* be established by like evidence.

We hold in *State v. Brown*, 95 Iowa, at 384, that being acquitted of the charge of compelling defilement is no bar to prosecution for conspiracy to injure the person of the same woman, though both indictments allege the same facts, so that, of necessity, the proof actually adduced under either indictment would have to be the same.

Larceny is not involved in burglary because burglary is complete as soon as the premises are broken and entered with the necessary felonious intent, even though the intended felony is not and cannot be committed. *State v. Leonard,* 135 Iowa, at 375. But evidence of an intent to steal must be adduced to convict for burglary, and surely the actual stealing after entry would be most conclusive proof of that intent. On the theory of appellants, an acquittal or conviction of burglary should be a bar to prosecuting for the theft accomplished by means of the burglary, because, manifestly, the burglary *might* be proven by the circumstances of the theft and the commission thereof, even though burglary may be committed without completed larceny; but prosecution for burglary does not bar one for the taking of property involved in the burglary.

In *State v. White,* 123 Iowa 425, the holding is that being convicted of keeping a gambling house is no bar to being prosecuted for gambling done by the defendant while so keeping the house. This decision proceeds on the ground that his acts of gambling would not, of themselves, have sustained a conviction for the keeping. But the evidence of the owner's gambling *might* be such as to prove that he was the keeper of the house. It might appear, for instance, that he gamed only with such visitors as could get no one else to engage them, with the explanation that he did not desire to lose customers because visitors were not being entertained, in which case his acts of gambling might reasonably induce a jury to find that he was the proprietor.

In *McClintock's* case, 1 G. Gr. 392, it is held that, though a co-defendant has been acquitted, it will not bar the prosecution of one jointly indicted and not yet tried, and defendant may not show that one jointly indicted with him and separately tried has been convicted. *State v. Fertig,* 98 Iowa, at 145; *State v. Dunn,* 116 Iowa, at 224.

The acquittal on separate trial of one of two jointly indicted for murder in the first degree does not bar the trial of the other for that offense. *State v. Lee,* 91 Iowa 499. Yet,

of necessity, the same evidence used on the trial of the first, or usable there, will sustain the conviction of the co-indictee.

In our opinion, the judgment below should be and it is —*Affirmed.*

DEEMER, C. J., LADD and PRESTON, JJ., concur.

WEAVER, J. (dissenting).—I agree with the majority in all it has to say as to the general rule affirming the propriety of joining in one indictment all persons charged with having any hand in an offense, whether as principals or accessories; but I am equally convinced that there are offenses of such distinctly individual character as to exclude the possibility of accessories, and the case at bar affords an apt illustration of what I mean. If either defendant undertook the practice of medicine without a proper license, he was guilty of the offense charged. If both failed in this respect, then both were guilty, but both were not guilty of the same offense; that is, each was guilty (if at all) for his own failure to comply with the law, and not because of the failure of his co-defendant.

Let us suppose A is alone indicted and put on trial for violating the law by practicing medicine without license. The evidence discloses that he has never pretended to any ability to heal, but, on the contrary, has disclaimed all such accomplishments, and refused at all times to treat the sick and afflicted; but it does appear that he is associated with B, who does hold himself out as a physician and surgeon, and practices in that capacity without a license. It is further shown that A furnishes B an office, actively advertises B's skill and ability and receives a share of B's earnings. Now whatever other law of God or man he may be guilty of violating, A is not guilty of B's offense against the statute which prohibits the practice of medicine without a license.

Again, A and B may form a partnership for the practice of medicine. Both hold themselves out as physicians and practice as such. It happens, however, that, while A has a license

regularly procured, B has none. Undoubtedly, B is guilty of violating the law. But is A guilty? I do not believe that any member of the majority would so hold; yet, if the theory of the law which sustains this indictment is correct, and the offense is one which can be jointly committed,—one in which there is a possibility of accessories who may be punished as principals,—there is no way for him to escape, although admittedly he was, at all times, a licensed practitioner. The absurdity of the proposition is apparent. Whatever may be the practice elsewhere, our statute affords no authority for prosecuting in one indictment two or more defendants charged with distinct offenses, and where this is attempted, the courts should not hesitate to declare such indictment invalid.

I would reverse the judgment below.

EVANS and GAYNOR, JJ., concur in this dissent.