ROBERT L. GALLINARO *vs.* COMMONWEALTH
(and a companion case[1]).

Suffolk. November 10, 1972. — January 3, 1973.

Present: TAURO, C.J., HENNESSEY, KAPLAN, & WILKINS, JJ.

*Betting. Practice, Criminal,* Sentence, Double jeopardy, Duplicitous convictions, Discharge of defendant. *Constitutional Law,* Double jeopardy. *Error, Writ of.*

Two indictments, each charging the same defendant under G. L. c. 271, § 17, with being found on the same day in the same apartment with

---

[1] Robert Bohigian *vs.* Commonwealth.

facilities for registering bets upon the results of races, one indictment specifying races of "certain beasts, to wit: horses" and the other races of "certain beasts, to wit: dogs," charged only one crime, the references to "horses" and "dogs" being surplusage, and proof of the charges established only one crime; and the defendant was subjected to double jeopardy by convictions on both indictments and a sentence to imprisonment on one and a sentence to pay a fine on the other.  [732–734]

Where two indictments against the same defendant under G. L. c. 271, § 17, for being found with facilities for registering bets upon the results of races charged only one offence and the proof established only one, but the defendant, on conviction on both indictments, was erroneously sentenced to imprisonment on one and to pay a fine on the other, payment of the fine fully executed the sentence to imprisonment and entitled the defendant, on writ of error, to be discharged; this court had no inherent power to alter such result.  [734–737]

TWO PETITIONS for writs of error filed in the Supreme Judicial Court for the county of Suffolk on July 24, 1972.

The cases were heard by *Reardon, J.*

*Thomas C. Cameron* for the petitioners.

*Charles E. Chase,* Assistant Attorney General, for the Commonwealth.

WILKINS, J.  The petitioners have excepted to orders of the single justice, after hearing, denying their substantially identical petitions for writs of error with respect to judgments sentencing each to imprisonment.

Each petitioner was convicted of violations of G. L. c. 271, § 17, alleged separately in three indictments.  In relevant part, § 17 provides for punishment "by a fine of not more than three thousand dollars *or* by imprisonment" (emphasis supplied) of any person who ". . . is found in any place . . . with apparatus, books or any device, for registering bets . . . upon the result of a trial or contest of skill, speed or endurance of man, *beast,* bird or machine, or upon the result of a *game. . .*" (emphasis supplied).[2]  The three indictments in each

_____

[2] General Laws c. 271, § 17 (as appearing in St. 1968, c. 116), in its entirety reads as follows: "Whoever keeps a building or room, or any part thereof, or occupies, or is found in, any place, way, public or private, park or parkway, or any open space, public or private, or any portion thereof, with apparatus, books or any device, for registering bets, or buying or selling pools, upon the result of a trial or contest of

case charged each petitioner respectively with being found on a particular day in a certain apartment in Brighton with apparatus, books and devices for the registering of bets (1) "upon the results of trials and contests of skill, speed and endurance of certain beasts, to wit: horses" (the first indictments) ; (2) "upon the results of trials and contests of skill, speed and endurance of certain beasts, to wit: dogs" (the second indictments) ; and (3) "upon the results of baseball games" (the third indictments). The first and second indictments substantially follow the statutory language, then add specific references (not appearing in the statute) to "horses" in one instance and to "dogs" in the other.

In the course of their joint trial, each petitioner, contending that the three indictments under § 17 charged but one crime, moved that the Commonwealth be compelled to elect among the indictments brought under § 17. These motions were denied, and the petitioners excepted. The petitioners were each convicted on each of the three indictments under § 17 (as well as under certain other indictments). Each was sentenced to two years in the house of correction for the violation of § 17 concerning horses (the first indictments), and each was given separate fines (of $1,000 and $2,000) for violations of § 17 concerning dogs and baseball games (the second

skill, speed or endurance of man, beast, bird or machine, or upon the result of a game, competition, political nomination, appointment or election, or whoever is present in such place, way, park or parkway, or any such open space, or any portion thereof, engaged in such business or employment; or, being such keeper, occupant, person found or person present, as aforesaid, registers such bets, or buys or sells such pools, or is concerned in buying or selling the same; or, being the owner, lessee or occupant of a building or room, or part thereof, or private grounds, knowingly permits the same to be used or occupied for any such purpose, or therein keeps, exhibits, uses or employs, or knowingly permits to be therein kept, exhibited, used or employed, any device or apparatus for registering such bets, or for buying or selling such pools, or whoever becomes the custodian or depository for hire, reward, commission or compensation in any manner, of any pools, money, property or thing of value, in any manner staked or bet upon such result, shall be punished by a fine of not more than three thousand dollars or by imprisonment in the state prison for not more than three years, or in jail or the house of correction for not more than two and one half years."

and third indictments). Execution of these sentences was stayed pending appeal.

The petitioners' exceptions to the denial of their respective motions that the Commonwealth make an election among the § 17 indictments were assigned as error in their claims of appeal to this court pursuant to G. L. c. 278, §§ 33A–33G. However, neither petitioner chose to argue that assignment of error upon appeal, and other assignments of error were argued unsuccessfully. *Commonwealth* v. *Gallinaro*, 360 Mass. 868, cert. den. sub nom. *Gallinaro* v. *Massachusetts*, 406 U. S. 945.

Following the denial of their petitions for writs of certiorari, the stays of execution of sentence were revoked, the sentences to the house of correction were reduced from two years to eighteen months and the fines under the remaining two indictments against each petitioner were paid. Within a week, these petitions for writs of error were filed, asserting that there was but one violation of § 17 and that because upon the payment of the fines the sentences were fully executed, the sentences of imprisonment should be vacated and the petitioners should forthwith be discharged from custody. Each petitioner, as indicated above, has excepted to the order of the single justice denying the issuance of a writ of error.

It appears from the consolidated bill of exceptions that the single justice did not reach the merits of the allegations of each petition because he declined to issue the writs of error on the basis of principles expressed in *Commonwealth* v. *Cortellesso*, 354 Mass. 514, 517–518. The *Cortellesso* case sets forth the proposition that a writ of error is not available to review points which could have been made at the trial and raised on exceptions or appeal. It is clear that legal arguments now advanced to this court were considered by counsel for the petitioners during the initial trial, that each petitioner's rights were saved so as to make it possible to argue in this court the question whether there was only one violation of § 17 and that, after assigning the point

as error on appeal, the petitioners waived the point by not arguing it in their briefs.   See S.J.C. Rule 1:13, 351 Mass. 738.   If the relief now sought by the petitioners required this court to exercise discretion, there is little about their conduct in dealing with the question of the duplicity of the indictments which would prompt us to exercise such discretion in their favor.

The petitioners contend, however, that this is not a case where the exercise of our discretion is involved. They say that the Superior Court lacked jurisdiction to impose both a jail sentence and a fine in these circumstances.   They contend at the very least that a single offence was alleged in the first and second indictments. They argue that § 17 speaks of "the results of trials and contests of skill, speed and endurance of certain beasts," and that the references to "horses" and "dogs" in the first and second indictments are unnecessary surplusage and do not make two crimes where the statute describes but one.   The petitioners, assuming the duplicity of the first and second indictments, next contend that when the fines were paid with respect to the convictions under the second indictments, it was error to remand the petitioners to the custody of the sheriff for further punishment pursuant to the sentences under the first indictments because § 17 provides very clearly that the penalty shall be either a fine *or* imprisonment.   The petitioners assert that by this procedure there has been a violation of their "rights not to be twice put in jeopardy for the same offense, under the Fourteenth Amendment to the United States Constitution and G. L. c. 263, §§ 7–8a [*sic*], and not to be subjected to cruel and unusual punishment under the Fourteenth Amendment to the United States Constitution and Article XXVI of the Declaration of Rights of the Massachusetts Constitution." Finally, the petitioners say that it is too late to correct the action of the Superior Court and that there is no alternative but to set them free.

We believe that the same crime was charged in the first and second indictments.   Except for the alternate

concluding word ("to wit: *horses*" or "to wit: *dogs*"), the indictments are identical.[3] A number of crimes are described in § 17. Section 17 does not, however, indicate a legislative intent to create more than one crime where the "apparatus, books or any device" for registering bets concern the "skill, speed or endurance" of more than one species of "beast." The references to "horses" and "dogs" were not necessary to allege the crime.[4] These words were unnecessary to the allegations of the indictments, and, therefore, the fact that the beasts were "dogs" or "horses" did not have to be proved. G. L. c. 277, § 35. *Commonwealth* v. *Baxter*, 267 Mass. 591, 594. *Commonwealth* v. *Snow*, 269 Mass. 598, 608. *Commonwealth* v. *Parrotta*, 316 Mass. 307, 308–309. Proof was necessary, however, that the apparatus, books or device for registering bets concerned bets relating to the "skill, speed or endurance" of some beast. Proof of apparatus for registering bets on horse races or on dog races, or both, was sufficient in this respect to establish the crime. But such proof established only one crime. Because the facts necessary to convict under the first and second indictments were the same, the petitioners were subjected to double jeopardy by the joint pendency of those indictments and by convictions thereunder. See *Commonwealth* v. *Beneficial Fin. Co.* 360 Mass. 188, 225–226; *Kuklis* v. *Commonwealth*, 361 Mass. 302, 306. Because the petitioners were convicted under the first and second indictments of but one violation of § 17, we are constrained to conclude that they could have properly

---

[3] Each first indictment, after naming the defendant, reads as follows: "on the thirteenth day of June, in the year of our Lord one thousand nine hundred and seventy, [the defendant] was found in a certain place, to wit: the apartment on the first floor of the two-family dwelling house situate at and numbered 241 Foster Street, in the Brighton section of the said City of Boston, with certain apparatus, books and devices for the registering of bets upon the result of trials and contests of skill, speed and endurance of certain beasts, to wit: horses."

[4] A defendant could seek knowledge of the nature and grounds of the crime charged by applying for a bill of particulars. See G. L. c. 277, § 40.

been subjected either to imprisonment or to a fine but not to both.[5]

We come next to the petitioners' contention that the payment of fines under the second indictments fully executed the sentences given under the first and second indictments and that the imposition of, or at least the carrying out of, the sentences of imprisonment was beyond the power of the court and unconstitutional. The Commonwealth points out with some justification that because the petitioners failed to raise the issue of the duplicity of the § 17 indictments in their appeals (while execution of their sentences was stayed), the sentences in the Superior Court, after the denial of their petitions for writs of certiorari, distributed a term of imprisonment of eighteen months and fines totaling $3,000 among three convictions, for each petitioner, in circumstances where the sentences of imprisonment and the total of the fines could have properly been imposed under two convictions under § 17 for each petitioner (for example, under the first and third indictments).[6] The Commonwealth further contends that the failure of the petitioners to press their argument concerning the duplicity of the § 17 indictments until after final sentencing in the

[5] The consequences of the imposition of both a fine and imprisonment for the same § 17 offences are presented for our determination by our holding with respect to the first and second indictments, and therefore it is unnecessary for us to decide whether the crimes charged in the third indictments (relating to being found with devices for registering of bets upon the results of baseball games), for which fines were imposed, are also part of the same offences. We would point out, however, that § 17 makes explicit reference to "the result of a game" quite apart from its reference to "the result of a trial or contest of skill, speed or endurance of . . . [a] beast." Because the proof required under the essential allegations of the third indictments is different from that required under the first two indictments, the considerations which led us to conclude the same crime was charged in each of the first two indictments are wholly inapplicable with respect to the third indictments. See Kuklis v. Commonwealth, 361 Mass. 302, 306. Nor are multiple indictments and convictions based upon multiple acts of registering bets at substantially the same time and place necessarily barred by our holding in this case.

[6] The sentences of imprisonment were for terms less than the maximum under § 17; $3,000 is the maximum permissible fine for a violation of § 17.

Superior Court constitutes duplicity of another sort on the petitioners' part which this court should not tolerate.[7]  Counsel for the petitioners assert, on the other hand, that the significance to their clients of the word "or" in § 17 did not occur to them until after the second sentencing in the Superior Court.  The motives of the petitioners in first raising this issue for decision at this time make no difference.  If, in these circumstances the law of this Commonwealth and Federal constitutional requirements make the carrying out of the prison sentences improper once the fines were paid, and if there is no method by which the petitioners may now properly be resentenced, the petitioners are entitled to be discharged.

The requirements of the Federal Constitution concerning double jeopardy and the law of this Commonwealth concerning the power of the courts to act in circumstances such as are presented here necessitate the conclusion that after the payment of their fines the petitioners should not have been remanded to the custody of the sheriff.[8]

The Fifth Amendment guaranty against double jeopardy protects not only against a second prosecution for the same offence but also against multiple punishments for the same offence.  *North Carolina* v. *Pearce*, 395 U. S. 711, 717.  This is a long established principle of Federal constitutional law.  In the landmark case of *Ex parte Lange*, 18 Wall. 163, the petitioner was sen-

---

[7] If the issue of the duplicity of the indictments had been argued initially, the errors in the sentences could properly have been corrected upon a remanding of the cases to the Superior Court for proper sentencing.  See G. L. c. 250, § 12.

[8] In other jurisdictions it has been consistently stated that where a statute prescribes a penalty of a fine *or* imprisonment and the sentence imposes both a fine *and* imprisonment, the prisoner who has paid his fine is entitled to be discharged.  *People ex rel. Maglori* v. *Siman,* 284 Ill. 28.  *People ex rel. Carlstrom* v. *Eller,* 323 Ill. 28.  *In re McNeil, petitioner,* 68 Kans. 366.  *Rupert* v. *State,* 9 Okla. Crim. 226, 229.  *Mount* v. *Quinlan,* 104 W. Va. 118.  See *Hunnicut* v. *Frauhiger,* 199 Ind. 501; *Breeden* v. *Nielsen,* 256 Iowa 358; *State ex rel. Sharf* v. *Municipal Court of Seattle,* 56 Wash. 2d 589.  See also 39 Am. Jur. 2d, Habeas Corpus, § 68; Annotation, 49 A. L. R. 494.

tenced to a fine *and* imprisonment under a Federal statute which provided for a fine *or* imprisonment. The petitioner promptly paid the fine. The trial judge on a writ of habeas corpus reëxamined his previously imposed sentence and undertook to revise it, imposing only imprisonment. The United States Supreme Court ordered the petitioner discharged saying that there has never been any doubt that the ban on double punishment provides "complete protection of the party when a second punishment is proposed in the same court, on the same facts, for the same statutory offence." *Id.* at 168. "[W]hen the prisoner, as in this case, by reason of a valid judgment, had fully suffered one of the alternative punishments to which alone the law subjected him, the power of the court to punish further was gone." *Id.* at 176.

Although there is no provision in the State Constitution concerning double jeopardy, the law in this Commonwealth has long recognized and applied principles comparable to the Federal constitutional requirements concerning double jeopardy.[9] Almost 120 years ago, in *Feeley's Case*, 12 Cush. 598, Chief Justice Shaw speaking for the court considered a petition for a writ of habeas corpus filed on behalf of a petitioner who was sentenced to both a fine *and* imprisonment in circumstances where only a fine *or* imprisonment was proper. The petitioner paid the fine. The court concluded that after the fine had been imposed and paid, it was error under the common law of this Commonwealth to impose any imprisonment. The court granted the writ of habeas corpus, although it stated that the petitioner more properly should have sought a writ of error. In such circumstances as exist here and as existed in *Feeley's Case*, although the excessive sentence is treated as within the

---

[9] In 1969, the Supreme Court held that the constitutional protection against double jeopardy contained in the Fifth Amendment was applicable to the States through the Fourteenth Amendment. *Benton v. Maryland*, 395 U. S. 784, 793–796.

jurisdiction of the judge to impose, it is voidable by proceedings upon a writ of error. *Sennott's Case*, 146 Mass. 489, 492–493. See *Stalker, petitioner*, 167 Mass. 11, 12; *Commonwealth* v. *Conroy*, 333 Mass. 751, 757.

The Commonwealth urges us, without citation of supporting authority, to conclude that this court has the power to order the correction of the sentences so that the petitioners will continue to serve the committed sentences which the judge imposed. We are aware of no statutory or common law authority for such action by this court.[10] In the face of both our own long standing common law rule that persons in the position of the petitioners must be discharged from custody and the substantial double jeopardy problems which a different conclusion would present, we see no basis for concluding that this court has any inherent power to order a resentencing of the petitioners at this time. Compare *Giles* v. *Commonwealth*, 339 Mass. 410, 413–414.

> *Exceptions sustained.*
> *Judgments of sentences on the first indictments reversed.*
> *Petitioners to be discharged, and awarded judgments for costs against the Commonwealth to be paid by the county of Suffolk.*

---

[10] As a general proposition this court need not order the discharge of a criminal defendant, who has been properly convicted but improperly sentenced. See *Gabis, petitioner*, 240 Mass. 465, 466. Upon reversal of the final judgment by reason of error in the sentence, a proper sentence may be obtained by action of this court or upon remand to the Superior Court. G. L. c. 250, § 12. Where, however, the sentence imposed upon a defendant has been executed by payment of a fine and the Commonwealth seeks to require him to serve a term of imprisonment to which he may not lawfully be subjected in addition to the fine, we do not read G. L. c. 250, § 12, as authorizing this court to order a correction of the sentence imposed upon such a defendant.