COMMONWEALTH *vs.* SAVERIO GALLARELLI & another.

Suffolk.    March 8, 1977. — May 11, 1977.

Present: HENNESSEY, C.J., BRAUCHER, KAPLAN, WILKINS, & LIACOS, JJ.

*Constitutional Law,* Double jeopardy. *Conspiracy. Contempt. Evidence,* Of conspiracy. *Practice, Criminal,* Double jeopardy, Fair trial. *Pleading, Criminal,* Duplicitous charges.

Conviction on a criminal contempt complaint charging the defendants with attempting to influence a juror and with interfering with the administration of justice did not bar, on grounds of double jeopardy, a subsequent indictment charging the defendants with conspiracy to influence a juror in violation of G. L. c. 268, § 13B. [576-578]

This court declined to depart from the "same evidence rule" in determining whether the defendants were subjected to double jeopardy by successive criminal prosecutions. [578-579] KAPLAN, J., concurring, with whom LIACOS, J., joined.

At the trial of an indictment charging conspiracy to influence a juror in violation of G. L. c. 268, § 13B, there was no error in admitting in evidence the defendant's conviction on a contempt complaint for the purpose of impeaching his credibility where there was nothing from which the jurors could have inferred that the conviction for contempt arose out of the same transaction as the conspiracy indictment. [579-580]

INDICTMENT found and returned in the Superior Court on April 17, 1975.

The case was tried before *Keating*, J.

After review was sought in the Appeals Court, the Supreme Judicial Court, on its own initiative, ordered direct appellate review.

*Charlotte Anne Perretta* for the defendants.

*Timothy P. O'Neill,* Assistant District Attorney, for the Commonwealth.

HENNESSEY, C.J.   The defendants Gallarelli and Charles Johnson were convicted after trial of an indictment which charged them with conspiring to influence a jury in violation of G. L. c. 268, § 13B. In these appeals the defendants raise the issue whether trial, conviction, and punishment

of the defendants for contempt of court was a bar, on the ground of double jeopardy, against subsequent trial and conviction of the defendants on an indictment for conspiracy which was based on the same incident on which the contempt charge was premised.

A second issue argued by the defendants is whether evidence of the defendant Gallarelli's conviction on the contempt charge was properly admitted against him for impeachment purposes at the subsequent trial of the conspiracy indictment.

We conclude that there was no error and that the judgments shall be affirmed.

The defendants were tried in the Superior Court, Suffolk County, before a judge, without jury, on a criminal contempt complaint charging that the defendants "did indirectly, wilfully endeavor by means of an offer and promise of something of value, to influence" one Patrick C. Flaherty, a juror in a trial in which the defendants were being prosecuted for disseminating obscene films. The complaint further alleged that their conduct interfered with, impeded, and obstructed the administration of justice, "and constituted contempt of this Honorable Court." The defendants were found guilty on March 3, 1975, and were each sentenced to a term of six months' incarceration in a house of correction.

On April 17, 1975, a Suffolk County grand jury returned an indictment which charged the defendants with conspiracy, together with one Thomas Bragdon, to influence a juror, one Patrick C. Flaherty, in violation of G. L. c. 268, § 13B. Subsequently the defendants were tried on this indictment before a jury in the Superior Court, Suffolk County. They were convicted and each was sentenced to serve a term of two and one-half years in a house of correction.

Before trial on the indictment the defendants filed a motion to dismiss the indictment on the ground of double jeopardy. This motion was denied and, after conviction and sentence, the defendants appealed.

The contempt complaint and the conspiracy indictment

were based on the same incident. At each of the successive trials the Commonwealth relied on substantially the same evidence and witnesses.

The evidence at each trial was as follows. In January, 1975, Gallarelli and Johnson were defendants in an obscenity trial in the Superior Court, Suffolk County. On January 25, 1975, while the obscenity trial was in progress, the defendant Gallarelli talked by telephone with Thomas Bragdon, a gas company employee, and asked Bragdon if he knew Pat Flaherty who also worked for the gas company. Bragdon responded that he did not know Flaherty. Gallarelli then asked Bragdon to find out what type of person Flaherty was, and gave Flaherty's address to Bragdon.

On January 28, 1975, Bragdon went to the Pru Cinema in Boston. Bragdon entered the Pru Cinema and asked for Gallarelli and Johnson. He then went outside, waited on the sidewalk, and was joined shortly by the defendant Johnson. Johnson asked Bragdon if he knew Flaherty and indicated that he wanted to discuss the obscenity trial in which he and Gallarelli were involved. Johnson told Bragdon that Flaherty had been approached previously and that he was going to go along with them. They merely wanted to let Flaherty "know how to sit" and that he would be "taken care of" and that Flaherty would receive $1,000. Johnson demonstrated to Bragdon how Flaherty was to fold his hands and how to sit. Johnson told Bragdon that this would inform the defendants that there would be either a hung jury or a not guilty verdict.

Then Gallarelli came out of the Pru Cinema and joined Bragdon and Johnson. Bragdon told Gallarelli that he did not know Flaherty. Gallarelli replied that Flaherty was involved in the obscene movie case, that he had already been approached, and that they wanted Bragdon to let him know how to sit so that they would know if he was with them. Gallarelli demonstrated to Bragdon how he wanted Flaherty to sit. Gallarelli told Bragdon that they would give Flaherty $1,000. Gallarelli reinformed Bragdon of Flaherty's address.

Later the same evening, Bragdon went to the residence of the juror Flaherty. When Flaherty came to the door of his home, Bragdon introduced himself and told him that he had a message from Jack. Flaherty asked who Jack was. Bragdon gave Flaherty the message on how to sit and that he would be taken care of if it was a hung jury or a not guilty. Flaherty asked Bragdon to leave and he did.

1. The Commonwealth argues that *Dolan* v. *Commonwealth,* 304 Mass. 325 (1939), is dispositive of the double jeopardy issue here. In the *Dolan* case, at 344, this court held that a punishment for contempt does not bar a prosecution for a crime based on the same act. See also *Berlandi* v. *Commonwealth,* 314 Mass. 424, 441 (1943); *Jurney* v. *MacCracken,* 294 U.S. 125, 151-152 (1935). The defendants urge that the *Dolan* case not be followed because the reasoning and the precedents relied on by the Dolan court have since been invalidated by opinions of the United States Supreme Court. They argue that the historical basis on which *Dolan* rested was that criminal contempt is sui generis, and constitutional guaranties, including that of double jeopardy, were of no applicability. On the contrary, they say, the application of constitutional rights to criminal contempt proceedings has been so continuous and consistent that these proceedings are now conducted as criminal trials. See, e.g., *Groppi* v. *Leslie,* 404 U.S. 496 (1972); *Mayberry* v. *Pennsylvania,* 400 U.S. 455 (1971).

Even if we accept the defendants' premise that the reasoning of *Dolan* as to the double jeopardy issue is now suspect, the defendants cannot prevail as to this issue in the face of other Massachusetts precedents. Indeed, the application of these precedents to the instant case becomes clear when, as the defendants urge, we consider the contempt matter to be a criminal proceeding.

We first consider the Commonwealth's premise that we should treat the contempt case as a charge of substantive violation of G. L. c. 268, § 13B, and that we should take note that the other charge was for conspiracy to violate the same statute. Persons may be prosecuted both for conspiracy to commit an illegal act and for the illegal act,

and such prosecutions are not barred on prior jeopardy grounds. *Commonwealth* v. *French,* 357 Mass. 356, 393 (1970), judgments vacated as to death penalty sub nom. *Limone* v. *Massachusetts,* 408 U.S. 936 (1972). *Commonwealth* v. *Stasiun,* 349 Mass. 38, 43-44 (1965). The only inhibition on such dual prosecution is that found in G. L. c. 278, § 2A, which prohibits the simultaneous trial of the conspiracy charge and the substantive offense. Thus the Commonwealth argues convincingly that the defendants may be prosecuted for both conspiracy and contempt of court. It is not significant that, in proving the conspiracy, the Commonwealth also presented evidence of overt acts by each of the defendants which tended to prove the substantive offense. That proof was admissible to show the character of the conspiracy (*Commonwealth* v. *Favulli,* 352 Mass. 95, 115 [1967]) but was not a necessary element to prove the indictment.

Again, treating the two cases, as the defendants urge, as criminal charges, the defendants fail in their argument as tested by a long-standing Massachusetts rule. This rule states: "A single act may be an offence against two statutes; and if each statute requires proof of an additional fact which the other does not, an acquittal or conviction under either statute does not exempt the defendant from prosecution and punishment under the other." *Kuklis* v. *Commonwealth,* 361 Mass. 302, 306 (1972), quoting from *Morey* v. *Commonwealth,* 108 Mass. 433, 434 (1871).[1] As to the conspiracy indictment in the instant case, the Commonwealth was required to prove an unlawful agreement (*Commonwealth* v. *Hunt,* 4 Met. 111, 125 [1842]) which it was not required to show in the contempt case. On the other hand, to prove the contempt, the Commonwealth had to prove a course of conduct tending to interfere with, impede, and obstruct the proper administration of justice (*Dolan* v. *Commonwealth,* 304 Mass. 325, 340 [1939])

---

[1] See, in the *Kuklis* opinion at 307 n.3, the reference to the impact of the rule as it applies to successive prosecutions and punishments for both the greater, and lesser included, offenses.

which was no part of the necessary proof as to the conspiracy indictment.

The defendants, referring to the rule set out in the *Kuklis* case as the "same evidence test," a descriptive phrase commonly used for this rule in other jurisdictions, urge that this court should, for the first time in this Commonwealth, apply a "same transaction" rule. Such a rule would require that all charges arising out of the same incident or transaction be presented and prosecuted together. The argument is that the "same evidence" test permits multiple prosecutions where a single transaction is divisible into discrete crimes. See the concurring opinion of Mr. Justice Brennan, in *Ashe* v. *Swenson*, 397 U.S. 436, 448-460 (1970), which contends that the "same transaction" test should be constitutionally required as supportive of the double jeopardy principle. See also the dissenting opinion of Mr. Chief Justice Burger, in the *Ashe* case at 468-470 which is critical of the reasoning behind the "same transaction" test, at least in the context of that case.[2]

Whereas the "same evidence" rule has broad support among the several jurisdictions,[3] that is clearly not true of the "same transaction" rule.[4] We regard the "same transaction" rule as not constitutionally required. Nor are we inclined as a matter of policy to modify our approval of the "same evidence" rule as first clearly enunciated in *Morey* and restated in *Kuklis*. See also *Gallinaro* v. *Commonwealth*,

---

[2] In the *Ashe* case a majority of the Justices of the Supreme Court held that the later prosecution was barred on estoppel grounds, since a jury verdict of acquittal in the earlier prosecution compelled, in the circumstances, a conclusion that the defendant was innocent of all crimes. The majority did not adopt the "same transaction" test or hold that it is constitutionally required. See the emphasis as to this point in the concurring opinion of Mr. Justice Harlan at 448.

[3] See, e.g., *State* v. *Ahuna,* 52 Haw. 321 (1970); *State* v. *McAninch,* 172 Iowa 96 (1915); *State* v. *Labato,* 7 N.J. 137 (1951); *Spannell* v. *State,* 83 Tex. Crim. 418 (1918); *Jones* v. *Commonwealth,* 208 Va. 370 (1967); *State ex rel. Zirk* v. *Muntzing,* 146 W. Va. 349 (1961).

[4] See, e.g., *Ashe* v. *Swenson,* 397 U.S. 436, 451 (1970) (Brennan, J., concurring).

362 Mass. 728 (1973).[5] We do not say that there may never be a case where prosecutorial discretion may be exercised in such a way under the "same evidence" rule as to amount to such harassment in multiple and successive prosecutions as to require relief for the defendant. That is clearly not the situation here where the initial proceeding (for contempt) was instigated, in a practical sense, by the judge rather than by the prosecutor.

2. The defendant Gallarelli argues that it was error for the judge to permit the Commonwealth to introduce proof of the guilty adjudication on the contempt complaint for the purpose of impeaching Gallarelli's credibility as a witness. There was no error. General Laws c. 233, § 21, provides, in pertinent part: "The conviction of a witness of a crime may be shown to affect his credibility." Clearly, conviction and sentence to punishment for criminal contempt is, within the meaning of c. 233, § 21, a judgment of conviction in a criminal case. See *Berlandi* v. *Commonwealth*, 314 Mass. 424, 426-427 (1943); *Dolan* v. *Commonwealth*, 304 Mass. 325, 328 (1939); *Menna* v. *New York*, 423 U.S. 61 (1975); *Bloom* v. *Illinois*, 391 U.S. 194, 201 (1968).

Although the impeachment statute, c. 233, § 21, requires in its operation distinctions to be made between felonies and misdemeanors, and while the defendant Gallarelli contends that contempt is not established in the law as either a felony or a misdemeanor, that establishes no sound reason why the contempt adjudication may not be shown. Since a sentence of six months was imposed, the conviction here should clearly be treated as a misdemeanor. As such, it was not barred by the statutory provision that a record of a misdemeanor shall not be shown after five years from the date on which sentence on the conviction was imposed. c. 233, § 21.

---

[5] Among other considerations is that such a new policy would be in conflict with various legislative provisions: e.g., the requirement of successive, rather than concurrent, prosecutions for conspiracy and the substantive offense (G. L. c. 278, § 2A); the various provisions for successive Federal and State prosecutions arising out of the same transaction.

Similarly, the defendants' contention that the contempt conviction is not admissible because it is not subject to a statute of limitations is without substance. Since criminal contempt is a crime it has a statute of limitations of six years under the statute, G. L. c. 277, § 63, viz.: "An indictment for any other crime shall be found and filed within six years after the crime has been committed . . . ."

In light of our conclusions, we need not consider the Commonwealth's "harmless error" argument, which relies on the fact that other and far more serious convictions were admitted for the purpose of impeaching Gallarelli.

Both defendants argue that they were prejudiced because the jury might well have inferred that the conviction for contempt arose out of the same transaction as the conspiracy indictment then on trial. We agree that if this were so it would raise a serious issue of fairness, cf. *Commonwealth* v. *DiMarzo*, 364 Mass. 669, 678 (1974) (Hennessey, J., concurring), where the fairness of allowing proof of a defendant's prior convictions of crimes similar to the charge then being tried is questioned, even though clearly permissible under the statute. An even more serious doubt as to fairness would arise if it could be shown that the jury had an awareness such as that asserted here by the defendants.[6] However, that is not the case. The record shows that the jury were not informed of any facts which tended to show a connection between the contempt and the conspiracy. The place and date of the occurrence of the contempt was not disclosed; only the date of the contempt *conviction* was shown and this, of course, varied from the dates of the alleged conspiracy as shown in the indictment. No certified record or other document was received in evidence or shown to the jury.

*Judgments affirmed.*

KAPLAN, J. (concurring, with whom Liacos, J., joins). On the question what offenses should be joined for pur-

---

[6] In that instance, also, it is clear that the harmless error argument of the Commonwealth would be inapposite.

poses of trial, the "same evidence" doctrine works out as an arid and inadequate doctrine. It is somewhat ameliorated by the court's direction to prosecutors not to abuse their discretion by engaging in harassing multiple prosecutions. That is good as far as it goes, but we should take the benefit of the better thought on the subject embodied in Model Penal Code § 1.07(2),(3) (Proposed Official Draft 1962) (set out following this opinion). There is no need to claim that such provisions are constitutionally compelled. They are sound and should be accepted as a general standard for the Commonwealth, subject to supersession by a more particularized rule to be adopted after study and recommendation in the usual course by our Advisory Committee on Rules of Criminal Procedure. This suggestion follows in the tracks of an opinion by Jacobs, J., who led his court to a like conclusion in *State* v. *Gregory,* 66 N.J. 510 (1975). See ABA Project on Minimum Standards for Criminal Justice, Standards Relating to Joinder and Severance § 1.3 (Approved Draft 1968); 7 Colo. Rev. Stat. Ann., Rules of Criminal Procedure 8 (a) (1973); Smith-Hurd Ill. Ann. Stat. c. 38, § 3-3 (1972); *People* v. *Golson,* 32 Ill. 2d 398 (1965), cert. denied, 384 U.S. 1023 (1966). Cf. *People* v. *White,* 390 Mich. 245 (1973); *State* v. *Brown,* 262 Ore. 442 (1972); *Commonwealth* v. *Campana,* 452 Pa. 233, vacated and remanded, 414 U.S. 808 (1973), on remand, 455 Pa. 622, cert. denied, 417 U.S. 969 (1974); *Regina* v. *Connelly,* [1964] A.C. 1254 (especially Lord Devlin's judgment, 1338, 1347).

As to G. L. c. 278, § 2A, which looks to separate trials of a substantive offense and a related conspiracy, we have said, "The legislative history affords no indication of why § 2A, which may add new complications to enforcement of the criminal law, was adopted at all . . . ." *Commonwealth* v. *French,* 357 Mass. 356, 375 n.20 (1970). Surely § 2A does not represent a definite expression of a legislative preference for a general procedure incompatible with the Model Penal Code. The Federal-State problem need not be instantly solved.

As it happens, the present case is an extraordinary one

which does not fall within the policy of the recommended practice because, as the court intimates, the successive proceedings served different interests. But this is an appropriate occasion for announcing a standard, as indeed the court is doing in the main opinion.

### MODEL PENAL CODE (PROPOSED OFFICIAL DRAFT 1962)

"Section 1.07. Method of Prosecution When Conduct Constitutes More Than One Offense.

". . . .

"(2) *Limitation on Separate Trials for Multiple Offenses.* Except as provided in Subsection (3) of this Section, a defendant shall not be subject to separate trials for multiple offenses based on the same conduct or arising from the same criminal episode, if such offenses are known to the appropriate prosecuting officer at the time of the commencement of the first trial and are within the jurisdiction of a single court.

"(3) *Authority of Court to Order Separate Trials.* When a defendant is charged with two or more offenses based on the same conduct or arising from the same criminal episode, the Court, on application of the prosecuting attorney or of the defendant, may order any such charge to be tried separately, if it is satisfied that justice so requires."