NOTICE:  All slip opinions and orders are subject to formal
revision and are superseded by the advance sheets and bound
volumes of the Official Reports.  If you find a typographical
error or other formal error, please notify the Reporter of
Decisions, Supreme Judicial Court, John Adams Courthouse, 1
Pemberton Square, Suite 2500, Boston, MA, 02108-1750; (617) 557-
1030; SJCReporter@sjc.state.ma.us

SJC-11461


COMMONWEALTH  vs.  EDGAR L. SELAVKA.



Hampshire.     February 4, 2014. - August 25, 2014.

Present:  Ireland, C.J., Spina, Cordy, Botsford, Gants, Duffly,
& Lenk, JJ.[1]


Sex Offender.  Global Positioning System Device.  Practice,
    Criminal, Sentence, Probation, Double jeopardy, Duplicative
    punishment.


    Indictments found and returned in the Superior Court
Department on February 13, 2007.

    A motion to vacate a condition of probation, filed on
November 19, 2012, was heard by Mary-Lou Rup, J.

    The Supreme Judicial Court granted an application for
direct appellate review.


    Kathryn Hayne Barnwell (Bonnie G. Allen with her) for the
defendant.
    Steven Greenbaum, Assistant District Attorney, for the
Commonwealth.
    William C. Newman & Matthew R. Segal, for American Civil
Liberties Union of Massachusetts, amicus curiae, submitted a
brief.

---

    [1] Chief Justice Ireland participated in the deliberation on
this case prior to his retirement.

LENK, J.  Fifteen months after child pornography was discovered on his computer, the defendant pleaded guilty to eleven counts of possessing child pornography in violation of G. L. c. 272, § 29C.  In addition to a period of incarceration, the defendant was sentenced to a term of probation.  Notwithstanding the provisions of G. L. c. 265, § 47, requiring that defendants convicted of certain enumerated sex offenses, including possession of child pornography, be subject to global positioning system (GPS) monitoring as a condition of any term of probation, such monitoring was not imposed as part of the defendant's sentence.  Almost one year later, the Commonwealth sought correction before the sentencing judge of what it termed an illegal sentence by the addition of GPS monitoring as a condition of the defendant's probation.  After a hearing, the Commonwealth's motion was allowed and GPS monitoring was ordered for the duration of the defendant's probationary period.

The defendant now appeals from the denial of his subsequent motion brought pursuant to Mass. R. Crim. P. 30 (a), as appearing in 435 Mass. 1501 (2001) (rule 30[a]), to vacate the addition of GPS monitoring to the conditions of his probation, contending both that the judge lacked authority to modify his sentence and that the delayed imposition of GPS monitoring violated principles of double jeopardy.  As we determined in Commonwealth v. Guzman, ante     (2014), G. L. c. 265, § 47,

affords a sentencing judge no discretion as to the imposition of GPS monitoring for probationers convicted of the specified predicate offenses.  Accordingly, the defendant's initial sentence was illegal insofar as it did not include GPS monitoring as a condition of the defendant's probation.  In the circumstances, however, the belated correction of that sentence contravened the defendant's legitimate expectation of finality in the terms of his initial sentence, and the imposition of GPS monitoring on him cannot stand.

1.  Background.  On April 22, 2008, the defendant, who was then over fifty years old, pleaded guilty to eleven counts of possession of child pornography, G. L. c. 272, § 29C.  Neither during the plea colloquy that day nor at the subsequent sentencing hearing on July 9, 2008, was any mention made of the fact that G. L. c. 265, § 47, required the imposition of GPS monitoring as a condition of any term of probation.  At the sentencing hearing, the defendant was sentenced to two concurrent terms of incarceration for two and one-half years, each with one year to serve and the balance to be suspended during a seven-year term of probation.  The judge accepted all of the Commonwealth's recommended special conditions of probation;[2] GPS monitoring was not among them.  Moreover, the

---

[2] The Commonwealth requested, and the judge ordered as conditions of probation, that the defendant participate in sex

defendant's probation contract did not mention GPS monitoring. The defendant was released on parole on February 13, 2009.[3]

On May 22, 2009, after the defendant had completed his committed sentence and while he was serving his probationary term, the Commonwealth filed a motion for GPS monitoring of defendant, arguing that the sentencing judge had been required to impose GPS monitoring as a condition of the defendant's probation pursuant to G. L. c. 265, § 47.  After a hearing in June, 2009, the judge allowed the motion over the defendant's objection, but ordered that the defendant not be subject to any geographic exclusion zones.[4]  On November 19, 2012, before a different judge, the defendant moved pursuant to rule 30 (a) to vacate the modified sentence.

---

offender treatment, continue taking his then-current medications, participate in substance abuse treatment, and attend Narcotics Anonymous.  The judge also prohibited the defendant from using the Internet, having unsupervised contact with minor children, living with minor children, and obtaining employment requiring unsupervised contact with minor children.

[3] On September 8, 2008, the defendant filed a motion to revise and revoke his sentence pursuant to Mass. R. Crim. P. 29 (a), 378 Mass. 899 (1979) (rule 29 [a]); he sought a reduction of the period of incarceration from one year to six months.  The sentencing judge denied the motion.

[4] General Laws c. 265, § 47, provides that the Commissioner of Probation (commissioner) may prohibit a defendant from entering certain geographic areas throughout the term of his probation, if applicable.  Here, the commissioner did not propose any exclusion zones.

While this motion was under advisement, the defendant visited a movie theater during his probation and while wearing the GPS device. Upon leaving the theater, he received voicemail messages from the Department of Probation, instructing him to telephone the electronic monitoring company. Although the monitoring company told the defendant that he was "all set," police officers arrested him for purportedly violating the conditions of his probation, and detained him for four days. Seeking release, the defendant moved to dismiss the asserted violation and to stay the execution of GPS monitoring. The motion judge dismissed the alleged violation without prejudice, but declined to stay the imposition of GPS monitoring. Subsequently, the judge denied the rule 30 (a) motion as well as a motion to reconsider.

2. Discussion. The defendant contends, first, that the sentencing judge lacked authority to alter the terms of his probation, and, second, that the belated imposition of GPS monitoring as a condition of his probation violated the principles of double jeopardy. The Commonwealth maintains that the defendant's initial sentence was illegal for its failure to include GPS monitoring, and that the passage of time did not prevent the judge from correcting that error. The Commonwealth further urges that the defendant had no legitimate expectation of finality in his illegal sentence.

We begin by noting that the defendant's initial sentence was, in fact, illegal for its failure to include GPS monitoring. See Goetzendanner v. Superintendent, Mass. Correctional Inst., Norfolk, 71 Mass. App. Ct. 533, 537 (2008), quoting Commonwealth v. Layne, 21 Mass. App. Ct. 17, 19 (1985) (illegal sentence is one that is "in some way contrary to the applicable statute"). As we held in Commonwealth v. Guzman, supra at    , G. L. c. 265, § 47, requires a sentencing judge to impose GPS monitoring where a defendant has been convicted of an enumerated offense and has been sentenced to a term of probation.  The defendant here pleaded guilty to possession of child pornography, a qualifying offense under G. L. c. 6, § 178C, and was sentenced to a seven-year probationary term.  Pursuant to G. L. c. 265, § 47, therefore, the defendant's initial sentence was illegal insofar as it did not include GPS monitoring,[5] and

_____

[5] The Commonwealth contends, separately, that the defendant's initial sentence did, in fact, include global positioning system (GPS) monitoring as a condition of probation. Because G. L. c. 265, § 47, operates automatically, the Commonwealth maintains, the sentencing judge need not specifically have ordered such monitoring.

We reject this interpretation.  The GPS monitoring mandated by G. L. c. 265, § 47, is not like other conditions of probation that a sentencing judge need not always articulate.  See Rule 56 of the Rules of the Superior Court (2012) (enumerating conditions applicable to all terms of probation and stating that "[a]ny other condition shall be presumed to be in addition to the foregoing").  Unlike those routine conditions, which include compliance with all laws and orders of the court, contact with the probation officer at his request, and reasonable efforts to

the subsequent imposition of GPS monitoring constituted a revision of that illegal sentence.

Given this premise, we consider whether the sentencing judge had the authority to correct the defendant's illegal sentence, then examine whether he was time barred from doing so under the principles of double jeopardy. We conclude that, although the judge was empowered to correct the defendant's sentence, he was not permitted to do so nearly one year after the defendant received that sentence, where the defendant already had served his entire period of incarceration and had a legitimate expectation of finality in the sentence as initially imposed. We therefore vacate the order insofar as it imposes GPS monitoring on the defendant as a condition of his probation.

a. <u>Judge's authority to modify the defendant's sentence</u>. The defendant contends that the judge lacked authority to alter his sentence in response to the Commonwealth's motion for GPS monitoring. Notably, the Commonwealth filed that motion without making reference to any rule of criminal procedure that would

_____

obtain and maintain employment, the imposition of GPS monitoring is singularly punitive in effect. See <u>Commonwealth</u> v. <u>Cory</u>, 454 Mass. 559, 568-569 (2009). For this reason, a defendant must receive actual notice from the sentencing judge that his probation will be conditioned on such a harsh requirement. Cf. <u>Commonwealth</u> v. <u>Murphy</u>, 73 Mass. App. Ct. 57, 65-66 (2008); Mass. R. Crim. P. 12 (c) (3) (B), as appearing in 442 Mass. 1511 (2004) (judge required to inform defendant, during plea colloquy, of maximum possible sentence for his offense as well as any mandatory minimum sentence).

have permitted it to do so.  Neither Mass. R. Crim. P. 29 (a),
378 Mass. 899 (1979) (rule 29 [a]), nor rule 30 (a), the usual
mechanisms for altering the terms of a defendant's sentence,
have application in these circumstances.  The defendant urges
the view that, absent authorization under these or any other
rules of criminal procedure, the judge's modification of his
sentence by the addition of GPS monitoring as an additional
condition of probation was invalid.  We do not agree.

The Massachusetts Rules of Criminal Procedure provide two
means by which a judge may alter the terms of a defendant's
sentence.  Under the caption, "Revision or Revocation of
Sentence," rule 29 (a) provides:

> "The trial judge upon his own motion or the written
> motion of a defendant filed within sixty days after the
> imposition of a sentence . . . may upon such terms and
> conditions as he shall order, revise or revoke such
> sentence if it appears that justice may not have been
> done."

Rule 30 (a) concerns postconviction relief, and provides:

> "Any person who is imprisoned or whose liberty is
> restrained pursuant to a criminal conviction may at any
> time, as of right, file a written motion requesting the
> trial judge to release him or her or to correct the
> sentence then being served upon the ground that the
> confinement or restraint was imposed in violation of the
> Constitution or laws of the United States or of the
> Commonwealth of Massachusetts."

It is plain that neither rule 29 (a) nor rule 30 (a)
expressly permits the Commonwealth to file a motion to correct
an illegal sentence or otherwise ask that a defendant's sentence

be altered.  See Commonwealth v. Woodward, 427 Mass. 659, 685 (1998).  Indeed, "there is no rule of criminal procedure that permits the Commonwealth to take such an appeal."[6]  Id.

In this regard, although the defendant earlier had filed a timely motion pursuant to rule 29 (a) seeking revision or revocation of his sentence, see note 3, supra, the Commonwealth did not urge the judge to take that opportunity to correct his error of law, and the sixty-day period contemplated by that rule had long since run when the judge did take such action.  Nor did the defendant file a rule 30 (a) motion prior to the Commonwealth filing its motion for GPS monitoring that would have afforded the judge a similar opportunity.  Contrast Commonwealth v. Cumming, 466 Mass. 467, 471 (2013) (judge amended sentence on grounds other than those requested by defendant in his rule 30 [a] motion; defendant had "knowingly exposed himself to the possibility that his entire sentencing scheme might be restructured").

But it cannot be the case that a judge lacks the authority to correct an illegal sentence simply because we have not determined a mechanism by which the Commonwealth may prompt such

---

[6] The Commonwealth did not petition the county court pursuant to G. L. c. 211, § 3, to correct an illegal sentence. Contrast Commonwealth v. Galvin, 466 Mass. 286, 289 (2013); Commonwealth v. Goodwin, 458 Mass. 11, 14-15 (2010).  It is in any event far preferable that such matters be addressed in the first instance by a judge of the trial court, particularly where the sentencing judge is available.

action.  "A sentencing judge has flexibility to respond appropriately" where he discovers an error in the defendant's initial sentence.  Dunbrack v. Commonwealth, 398 Mass. 502, 506 (1986).  Here, as noted, the failure of the judge to impose GPS monitoring on the defendant as a condition of his probation violated the terms of G. L. c. 265, § 47, and rendered the resulting sentence unlawful.  See Commonwealth v. McGuinness, 421 Mass. 472, 475 (1995) (sentence unlawful where "premised on a major misunderstanding of the sentencing judge as to the legal bounds of his authority").  The Commonwealth must have some recourse by which to prompt judicial action in these circumstances, and a judge must have the ability to take appropriate action to rectify the error.  See Thompson v. United States, 495 F.2d 1304, 1306 (1st Cir. 1974) ("a trial court not only can alter a statutorily-invalid sentence in a way which might increase its severity, but must do so when the statute so provides").

We note that the Commonwealth occasionally has sought to correct a purportedly illegal sentence by encouraging the sentencing judge to exercise his or her authority under rule 29 (a).  See, e.g., Commonwealth v. Galvin, 466 Mass. 286, 288 & n.7 (2013).  Cf. Commonwealth v. Sitko, 372 Mass. 305, 311 (1977), S.C., 379 Mass. 921 (1980) (Commonwealth sought, by means of rule 29 [a], to increase defendant's sentence).

Although nothing in the text of rule 29 (a) explicitly permits such requests, it is appropriate that the Commonwealth be permitted to contest an invalid sentence by means of essentially the same mechanism for adjusting sentences that is available to the defendant and the sentencing judge.  The sixty-day period set forth in rule 29 (a) implicates certain of our common-law protections against double jeopardy, discussed in greater detail below.  Specifically, while subject to revocation and revision within the time frame and under the terms of rule 29 (a), a sentence remains conditional rather than final in nature.  This "reasonably balances the defendant's interest in finality against society's interest in law enforcement."  Aldoupolis v. Commonwealth, 386 Mass. 260, 275 (1982), S.C., 390 Mass. 438 (1983) (Aldoupolis).  Requiring that the Commonwealth now adhere to a uniform procedure further ensures that a defendant need not, based on the ongoing possibility of heightened punishment, "live in a constant state of anxiety and insecurity."  Id. at 274.

For these reasons, we determine that rule 29 (a), with its sixty-day time frame, is the proper vehicle by which the Commonwealth may challenge illegal sentences,[7] as here, and

---

[7] As at present, the Commonwealth may not use rule 29 (a) as a vehicle to contest a legal sentence with which it is dissatisfied.  When the Commonwealth proves that the sentence challenged is illegal, however, correction of the sentence is

request this court's standing advisory committee on the rules of criminal procedure to propose an amendment to rule 29 (a) reflecting this conclusion.

b. _Double jeopardy and the defendant's legitimate expectation of finality_. We turn now to the novel question before us: whether the belated correction of a defendant's initial sentence, invalid for its failure to have imposed a punitive probationary term required by statute, violates the double jeopardy protection against multiple punishments for the same crime. The defendant maintains that the belated addition of GPS monitoring to the conditions of his probation constituted the impermissible imposition of a new and harsher sentence at a time when his initial sentence, while invalid, had nevertheless become final. The Commonwealth, on the other hand, contends that double jeopardy was not violated by the correction of an illegal sentence nearly one year after that sentence first had been imposed given that the initial sentence was not final by virtue of illegality. For the reasons we discuss, we conclude that even an illegal sentence will, with the passage of time, acquire a finality that bars further punitive changes detrimental to the defendant. Accordingly, in the circumstances here, the delayed correction of the defendant's initial

---

mandatory and satisfies the rule's proviso that "justice may not have been done."

sentence, in which he by then had a legitimate expectation of finality, violated double jeopardy and cannot stand.

The guarantee against double jeopardy consists of three independent protections. "It protects against a second prosecution for the same offense after acquittal. It protects against a second prosecution for the same offense after conviction. And it protects against multiple punishments for the same offense." Aldoupolis, supra at 271-272, quoting North Carolina v. Pearce, 395 U.S. 711, 717 (1969). These proscriptions "represent[] a constitutional[8] policy of finality for the defendant's benefit" in criminal proceedings, Aldoupolis, supra at 274, quoting United States v. Jorn, 400 U.S. 470, 479 (1971) (plurality). See Commonwealth v. Goodwin, 458 Mass. 11, 19 (2010) (Goodwin), quoting United States v. Fogel, 829 F.2d 77, 88 (D.C. Cir. 1987) ("primary purpose of [double jeopardy] is to protect the finality of judgments"). Since the defendant here was not twice prosecuted for the same offense, we consider only whether he was subjected to multiple punishments for the same crime.

---

[8] The Massachusetts Declaration of Rights does not, in contrast to the United States Constitution, contain a double jeopardy clause, but we consider our common law to embrace the same principles and protections. See Aldoupolis v. Commonwealth, 386 Mass. 260, 271 n.14 (1982), S.C., 390 Mass. 438 (1983).

Despite the seemingly straightforward language of our double jeopardy principles, the scope of the protection against "multiple punishments for the same offense" is far from clear.[9] We have, however, repeatedly defined "multiple punishments" as those "in excess of what a Legislature intended to be the punishment for a particular offense," Aldoupolis, supra at 272, citing Albernaz v. United States, 450 U.S. 333, 344 (1981). For example, in Gallinaro v. Commonwealth, 362 Mass. 728, 729 n.2 (1973), two defendants were sentenced to a term of imprisonment as well as required to pay a fine under a statute that permitted only one or the other such penalty, not both. These sentences constituted multiple punishments, we concluded, because they violated the Legislature's stated intent that a defendant undergo but one of the two alternative statutory penalties. Id. at 732-733. See Ex parte Lange, 18 Wall. 163, 175-176 (1873) (judge prohibited from sentencing defendant to both fine and imprisonment where statute permitted only fine or imprisonment). Similarly, unless the Legislature has specifically authorized cumulative punishments, we have long prohibited separately penalizing a defendant for each of two convictions where one

---

[9] Then Justice Rehnquist observed that "the decisional law in the area is a veritable Sargasso Sea which could not fail to challenge the most intrepid judicial navigator." Albernaz v. United States, 450 U.S. 333, 343 (1981). See Marshall v. Commonwealth, 463 Mass. 529, 534 (2012) (addressing "web of jurisprudence" concerning double jeopardy principles in Commonwealth).

crime is a lesser included offense of the other.  See Commonwealth v. Suero, 465 Mass. 215, 223 (2013); Morey v. Commonwealth, 108 Mass. 433, 434 (1871).  See also Brown v. Ohio, 432 U.S. 161, 169 (1977) ("the Fifth Amendment forbids . . . cumulative punishment for a greater and lesser included offense").

The present case, however, does not resemble any of these situations.  Given that the imposition of GPS monitoring on the defendant was necessary to bring his initial sentence into compliance with G. L. c. 265, § 47, it cannot be said, by virtue of his corrected sentence, that the defendant endured a greater penalty than the Legislature had envisioned for his particular offense.  See United States v. DiFrancesco, 449 U.S. 117, 139 (1980) (no multiple punishment where defendants' increased sentence remained within statutory boundaries).  Indeed, as corrected, the defendant's sentence was exactly the sentence that the Legislature mandated:  the use of a GPS device as a mandatory condition of his probationary term.  See Bozza v. United States, 330 U.S. 160, 165-167 (1947) (judge permitted to correct initial sentence so as to include statutorily mandated fine).

It is precisely because an illegal sentence contravenes the intention of the Legislature that the modification of an illegal sentence, in itself, has not been seen as subjecting a defendant

to multiple punishments.  To the contrary, "[t]he sentence, as corrected, [merely] imposes a valid punishment for an offense instead of an invalid punishment for that offense."  Id. at 166-167 & n.2 (double jeopardy not implicated where judge, five hours after initial imposition of sentence, corrected erroneous omission from sentence).  Even where a corrected sentence is harsher than its previous iteration, a defendant is not punished twice where the sentencing judge "only set[s] aside what [he or she] had no authority to do, and substitute[s] directions required by the law to be done upon the conviction of the offender."  Id., quoting In re Bonner, 151 U.S. 242, 260 (1894).  See generally Commonwealth v. Cowan, 422 Mass. 546 (1996) (no discussion of double jeopardy where judge corrected sentence to incorporate statutory minimum requirement, subjecting defendant to harsher penalty).

This principle, however, does not resolve the case before us, which involves not merely the correction of an illegal sentence, but the long-delayed correction of such a sentence. Although it has been said that the rectification of an illegal sentence does not implicate the notion of multiple punishment since such a sentence is void and must be set aside, cases to that effect have not addressed whether substantial delay may render even an illegal sentence final for the purposes of double jeopardy analysis.  See, e.g., Bozza v. United States, supra at

166 ("five-hour interim" between initial sentence and subsequent correction); Commonwealth v. Cowan, supra at 549-550 (no discussion of double jeopardy where judge's correction of illegal sentence occurred within sixty-day period of rule 29 [a]).

We have held, outside the context of illegal sentences, that the addition of a sufficiently punitive term to a defendant's initial sentence may constitute multiple punishment if the revision adding a new and harsher penalty occurs after that sentence becomes final. In Goodwin, supra at 11-12, we considered whether a judge permissibly could modify the conditions of a defendant's probation by the addition of GPS monitoring. Ordinarily, reasonable additions to the conditions of a defendant's probation do not constitute the revision or revocation of a sentence under rule 29 (a). Id. at 16, citing Buckley v. Quincy Div. of the Dist. Court Dep't, 395 Mass. 815, 818-819 (1985). However, as we noted in Goodwin, supra at 19, certain modifications are "so punitive as to increase significantly the severity of the original probation," and, by virtue of their harshness, amount to sentence revisions within the meaning of rule 29 (a). Where such punitive amendments are at issue, we concluded, our common-law principles of double jeopardy bar the imposition of "what is essentially a new, harsher sentence" once the rule 29 period has expired. Goodwin,

supra.  Because the defendant's initial sentence had become final upon the expiration of the rule 29 (a) deadline, the addition of GPS monitoring -- a "serious, affirmative restraint" on a defendant's liberty -- as a condition of probation would constitute multiple punishment.  Id. at 22-23, quoting Commonwealth v. Cory, 454 Mass. 559, 570 (2009).

Similarly, in Commonwealth v. Bruzzese, 437 Mass. 606, 613 (2002) (Bruzzese), a judge had sentenced a defendant to four concurrent sentences, each consisting of two and one-half years of incarceration.  After the defendant had served those two and one-half years on the first three convictions, the judge revoked his probation as to the fourth, and ordered that he remain incarcerated for an additional year.  Id. at 614.  We barred this revision, which subjected the defendant to greater punishment than the initial sentencing scheme had contemplated, as an impermissible multiple punishment in violation of double jeopardy.  Id.  The entire concurrent sentencing scheme was subject to the terms of rule 29 (a), we noted, and "could not be changed" once the sixty-day deadline set forth by that rule had expired.  Id.  Cf. Commonwealth v. Woodward, 427 Mass. 659, 685-686, 690 (1998) (affirming denial of Commonwealth's postconviction request to vacate and remand lawful sentence for possible increase where defendant's expectation of finality in

initial sentence would render new, harsher sentence impermissible multiple punishment).

The circumstances of Goodwin and Bruzzese are, plainly, distinct in certain respects from those in the present case. Here, the modification requested was mandatory rather than discretionary in nature insofar as it was to remedy the erroneous sentence initially imposed. Goodwin and Bruzzese, on the other hand, both involved discretionary modifications to a defendant's sentence. See Goodwin, supra at 18 n.9 ("We address here only discretionary modifications of probation"). Moreover, whereas the defendant's initial sentence here was invalid for its noncompliance with G. L. c. 265, § 47, the sentences at issue in Goodwin and Bruzzese complied with all relevant statutes, both initially and as modified.

These factual differences notwithstanding, however, we have never indicated that the principles of finality on which Goodwin and Bruzzese relied are inapplicable where illegal sentences are concerned, or that an illegal sentence may never become final for the purposes of double jeopardy. Far from holding that the Commonwealth may correct an illegal sentence at any time without regard for a defendant's expectation of finality,[10] we have said

---

[10] Although a judge may correct, at any time, clerical errors and other technical flaws in a defendant's sentence, see Mass. R. Crim. P. 42, 378 Mass. 919 (1979) ("[C]lerical mistakes . . . may be corrected by the court at any time of its

that a sentencing judge may correct a defendant's illegal sentence only when the error "is discovered in a timely manner." Dunbrack v. Commonwealth, 398 Mass. 502, 506 (1986); Commonwealth v. Weymouth, 2 Allen 144, 145 (1861) (court may correct defendant's sentence within same term that it initially issued).  Cf. Commonwealth v. O'Brien, 175 Mass. 37, 39-40 (1899) (judge may "correct any illegality or error in a sentence, provided it then remains wholly unexecuted").  To be sure, a defendant's legitimate expectation of finality may well be diminished when his sentence is illegal.  See Commonwealth v. Woodward, supra at 687.  But, by the same token, that principle does not afford carte blanche to correct erroneous sentences at any point subsequent to their initial imposition.  See Breest v. Helgemoe, 579 F.2d 95, 101 (1st Cir. 1978) ("the power of a sentencing court to correct even a statutorily invalid sentence must be subject to some temporal limit").

The rationale underlying both Goodwin and Bruzzese thus applies with substantial force to the facts before us.  Where a defendant's expectation of finality in his initial sentence has "crystallized" after enough time, United States v. Lundien, 769 F.2d 981, 987 (4th Cir. 1985), cert. denied, 474 U.S. 1064 (1986), the invalidity of that sentence does not render its

own initiative . . ."), and Commonwealth v. Miranda, 415 Mass. 1, 5 (1993), "errors of substance" that "trample the defendant's rightful expectations" are not considered clerical.  See id.

subsequent correction by way of increased penalties immune to a double jeopardy challenge. Such an approach would undermine the notion of finality, which animates our common-law protections against double jeopardy and prevents the Commonwealth from "shatter[ing] the defendant's repose and threaten[ing] him with grievous harm." Double Jeopardy, 91 Harv. L. Rev. 101, 102 (1977). Even where a defendant's original sentence, as here, unquestionably is erroneous, his "interest in repose" remains, and may suffice to prohibit the addition of even those punitive terms necessary to bring the sentence into compliance with a relevant statute (citation omitted). See Aldoupolis, supra at 272.

In the future, as discussed, the Commonwealth will be obliged to discern and seek to correct sentencing errors within the sixty-day time period of rule 29 (a). Even an illegal sentence will become final for the purposes of double jeopardy after the expiration of that time period, and no longer will be subject to revision or revocation within the terms of rule 29 (a). Here, as was the case in Goodwin, supra, and Bruzzese, supra, the sixty-day period set forth in rule 29 (a) had long since expired when the Commonwealth requested the defendant's initial sentence be amended. We acknowledge that, at the time GPS monitoring was imposed on the defendant, we had not yet concluded that rule 29 (a) provided the relevant

deadline for the correction of illegal sentences.  Nevertheless, in the circumstances, we conclude that the belated imposition of GPS monitoring on the defendant violated the principle of finality and constituted an impermissible multiple punishment.

A defendant's expectation of finality in his sentence increases once he has begun to serve that sentence.  See Fine v. Commonwealth, 312 Mass. 252, 256 (1942); Commonwealth v. Weymouth, supra at 147.  Prior to the Commonwealth's request that GPS monitoring be imposed, the defendant had served approximately seven months of incarceration before being released on parole and, having completed his committed sentence, had begun serving his seven-year term of probation.  During that time, the defendant had every reason to believe that his sentence would remain fixed; he could not have anticipated that the judge might revisit his initial sentencing decision and "impose[] new burdens" on him.  Goodwin, supra at 19.  Contrast Commonwealth v. Cumming, 466 Mass. 467, 471 (2013) (defendant who filed rule 30 [a] motion to alter sentence diminished any expectation of finality he previously had in that sentence); United States v. DiFrancesco, 449 U.S. 117, 139 (1980) (judge permitted to increase defendant's initial sentence; defendant lacked expectation of finality in that sentence where statute provided that sentence was subject to appeal).

Moreover, the defendant was given no opportunity to withdraw his guilty plea upon the addition of GPS monitoring to the conditions of his probation, see Mass. R. Crim. P. 12 (c) (2), as appearing in 442 Mass. 1511 (2004), even though this revision did not "conform to [his] legitimate sentence expectation." Goodwin, supra at 21, quoting Reporters' Notes (Revised, 2004) to Rule 12, Mass. Ann. Laws Court Rules, Rules of Criminal Procedure, at 1429 (LexisNexis 2008-2009). Defendants who tender such pleas on the prosecutor's recommendation do so to achieve a measure of certainty in their sentences. "It would be unfair and contrary to the spirit of rule 12 (c) (2) for a judge to accept a plea bargain and impose the recommended sentence, and then, after the defendant has lost the opportunity to withdraw his plea, increase the sentence by adding a new or modified probationary condition so severe as to significantly increase the recommended sentence." Goodwin, supra.

In these circumstances, therefore, the imposition of GPS monitoring on the defendant was not timely enough to protect his interest in the finality of his initial punishment. The judge did not require the defendant to wear a GPS device until nearly one year after he first received his sentence. As discussed, by then the defendant had served his entire term of incarceration and had been given no notice that the conditions of his

probation might change.  Disrupting, at such a late date, the defendant's reasonable expectation of finality as to the conditions of his probation would engender precisely the "anxiety and insecurity" that our principles of double jeopardy guard against.  Aldoupolis, supra at 274.

3.  Conclusion.  Nearly one year after the defendant received his initial sentence, the judge allowed the Commonwealth's motion to impose GPS monitoring as an additional condition of the defendant's probation.  The defendant filed a rule 30 (a) motion seeking to vacate this addition to his initial sentence, and appealed from the denial of that motion.  For the reasons discussed, the order imposing GPS monitoring on the defendant was impermissible and is therefore vacated.  All other terms and conditions of the defendant's sentence were unaffected by the defendant's motion, and remain valid and unchanged.

So ordered.