SUPREME JUDICIAL COURT 
 
 COMMONWEALTH vs. CARLOS MUNIZ RODRIGUEZ

 
 Docket:
 SJC-13540
 
 
 Dates:
 May 8, 2024 - October 1, 2024
 
 
 Present:
 Budd, C.J., Gaziano, Kafker, Wendlandt, Georges, & Dewar, JJ.
 
 
 County:
 Middlesex
 

 
 Keywords:
 Sex Offender. Global Positioning System Device. Practice, Criminal, Probation, Double jeopardy. Constitutional Law, Double jeopardy, Search and seizure, Privacy. Search and Seizure, Probationer, Expectation of privacy. Privacy.
 
 

       Indictments found and returned in the Superior Court Department on April 2, 2014.
      A motion for relief from a condition of probation, filed on November 18, 2022, was heard by Laurence D. Pierce, J.
      The Supreme Judicial Court granted an application for direct appellate review.
      Abby P. Shyavitz for the defendant.
      Jessica Langsam, Assistant District Attorney (Alicia Henry Walsh, Assistant District Attorney, also present) for the Commonwealth.
      Patricia Muse, Ben Leatherman, & Matthew Spurlock, Committee for Public Counsel Services, for Committee for Public Counsel Services, amicus curiae, submitted a brief.
      GEORGES, J.  The defendant, Carlos Muniz Rodriguez, was convicted of sexual offenses and sentenced to a term in State prison, followed by five years of supervised probation.  Among the conditions of probation imposed at the time of sentencing, the defendant was required to stay away from the victim and her family.  The defendant was also subject to mandatory global positioning system (GPS) monitoring in accordance with G. L. c. 265, § 47 (§ 47).  One year after the defendant's sentencing, we held that § 47's mandatory imposition of GPS monitoring was overinclusive and that, to comport with constitutional requirements governing searches, a defendant is entitled to an individualized determination of whether the GPS condition is reasonable before its imposition.  Commonwealth v. Feliz, 481 Mass. 689, 690-691 (2019), S.C., 486 Mass. 510 (2020).  Following his release from prison, the defendant moved to vacate the GPS condition of his probation.  The judge denied the motion, finding that the condition was reasonable.  After doing so, the judge ordered the imposition of exclusion zones for the cities of Framingham and Marlborough, which the defendant was prohibited from entering.  These exclusion zones were not defined at the time of the defendant's original sentence.
      On appeal, the defendant argues that the judge erred in denying the motion to vacate because the Commonwealth failed to establish GPS monitoring was reasonable as to him.  He also argues that, where no exclusion zone was established as a condition of probation when he was originally sentenced, the judge was prohibited from adding any exclusion zone under double jeopardy principles.  We disagree.  We hold that the judge's addition of exclusion zones -- setting aside the particular scope of the exclusion zones here -- did not itself violate the prohibition against double jeopardy because exclusion zones were contemplated in the defendant's original sentence.  
      However, the scope of the exclusion zones ordered here went beyond both the permissible limits of § 47 and what is necessary to effectuate the goals of probation, and they consequently increased the defendant's sentence in violation of the prohibition against double jeopardy.  Additionally, although the scope of the exclusion zones ordered was impermissible, we conclude that the GPS condition was nonetheless reasonable because the Commonwealth had strong interests in the protection of the public through enforcement of exclusion zones and in the deterrence and investigation of future crimes, outweighing the invasion of the defendant's privacy.  Accordingly, we remand so that the exclusion zones may be revised to be consistent with this opinion.  
      Finally, we recognize that, since our decision in Feliz, defendants sentenced under § 47 have inconsistently received hearings to determine the reasonableness of their GPS monitoring conditions.  We therefore direct the probation department to remove the GPS monitor from any defendant who has yet to receive a reasonableness hearing pursuant to Feliz, but who is nonetheless presently wearing a GPS monitor pursuant to § 47, and to refrain from reattaching the monitor until and unless such a hearing is held.  Moving forward, the probation department must refrain from attaching GPS monitors to those defendants who have yet to receive their constitutionally mandated Feliz hearing.[1]
      1.  Background.  a.  The defendant's convictions.  In 2014, the defendant was indicted on four counts of rape of a child by force and three counts of indecent assault and battery on a child under the age of fourteen.[2]  The defendant was tried before a jury in 2017, but the judge declared a mistrial before a verdict could be reached on all counts.[3]  At his second trial the following year, the jury returned verdicts of guilty on two of the counts of indecent assault and battery on a child under the age of fourteen, which pertained to conduct the defendant committed against his granddaughter.[4]
      At the defendant's sentencing, his granddaughter gave a victim impact statement detailing the ways in which she continued to suffer from the defendant's abuse.  She stated that she was "see[ing her] grandfather everywhere, even in [her] own house" and described the fear she still felt toward him.
      The defendant was subsequently sentenced to a term of from four to six years in State prison on the first count, followed by five years of supervised probation on the second count.  As to the defendant's probation conditions, the following was imposed:
"You are to stay away and have absolutely no contact with the victim in this case and her family;
"You are to have no contact unsupervised with any children under the age of [sixteen];
"You are to submit to a sex offender evaluation and any treatment programs that follow from that evaluation;
"You are to be placed on a GPS monitoring device for the period of your probation;
"And you are to register as a sex offender."
Although the defendant was ordered to stay away from and have no contact with the victim and her family, no exclusion zones were established barring the defendant from any specifically defined areas.  However, the order of probation specified that the defendant was subject to the GPS conditions of § 47, including the "geographic exclusion zones established by the Commissioner of Probation."
      b.  The Feliz decision.  At the time the defendant was sentenced, GPS monitoring was automatically mandated as a condition of probation under § 47, as his convictions were for sex offenses enumerated in the statute.  After the defendant had been sentenced, we decided Feliz, 481 Mass. 689, in which we concluded that, before imposing a GPS condition, art. 14 of the Massachusetts Declaration of Rights requires a judge to conduct an individualized determination of whether that condition -- which constitutes a search -- is reasonable.  Id. at 690-691.  This individualized determination, we held, must "weigh[] the Commonwealth's need to impose GPS monitoring against the privacy invasion occasioned by such monitoring."  Id. at 691.  We further concluded that "[m]andatory, blanket imposition of GPS monitoring on probationers, absent individualized determinations of reasonableness, is unconstitutional."  Id. at 700.
      c.  The defendant's probationary term and Feliz motion.  The defendant began serving the probationary term of his sentence on November 18, 2022.  At that time, he filed a motion pursuant to Mass. R. Crim. P. 30 (a), as appearing in 435 Mass. 1501 (2001), to vacate the GPS condition of his probation, citing Feliz.  The defendant argued that no individualized determination of reasonableness took place in his case, making the imposition of the GPS condition an unconstitutional search.  Even if a hearing had taken place, the defendant argued, the GPS condition would not be reasonable in his circumstances because there was no exclusion zone imposed as a condition of his probation, meaning the GPS device could not be configured to alert the probation department of any alleged violation.  The defendant further argued that the GPS condition was unreasonable because there was no evidence that he was likely to violate the conditions of his probation.  Finally, the defendant contended that the GPS condition was especially burdensome to him because it would have an impact on his access to healthcare, as his medical conditions required periodic imaging that could not be conducted if he was wearing the device.  In support of his motion, the defendant submitted documentation about his medical conditions, his compliance with pretrial probation, and his living conditions at a nursing facility, as well as research about the risk of recidivism.
      On December 21, 2022, a hearing was held on the defendant's motion before the same judge who presided over the defendant's trial and sentenced him.  At the hearing, the Commonwealth relayed that the victim wished for the defendant to remain subject to the GPS condition.  The Commonwealth also noted that the defendant, since the time of his sentencing, had been classified as a level two offender by the Sex Offender Registry Board (SORB), reflecting a moderate risk of reoffense.  The Commonwealth further acknowledged that no exclusion zone had been set at the time of sentencing, but it requested that exclusion zones be added to include Framingham and Marlborough, cities the victim frequented to visit family.
      On January 30, 2023, the judge denied the defendant's motion to vacate the GPS condition of his probation.[5]  The judge concluded that the Commonwealth's interests in the protection of the public, deterrence and investigation of future crimes, and retribution outweighed the defendant's interest in privacy, and that the GPS condition was therefore reasonable.  The judge reasoned that the Commonwealth had established at the motion hearing that an exclusion zone could and would be created, supporting the Commonwealth's interest in protecting the victim.
      On February 8, 2023, the judge amended the conditions of the defendant's probation, adding an additional condition defining the cities of Framingham and Marlborough as exclusion zones.
      We allowed the defendant's application for direct appellate review before this court.
      2.  Discussion.  a.  The exclusion zones.  The defendant argues that when the judge added exclusion zones for the cities of Framingham and Marlborough, he increased the scope of the defendant's original sentence, in violation of the prohibition against double jeopardy.  For its part, the Commonwealth argues that, at the time of sentencing, the judge could not have anticipated our decision in Feliz and its requirement of individualized determinations of reasonableness before imposition of a GPS condition.  Consequently, the Commonwealth maintains that the judge's amended order of probation adding exclusion zones simply effectuated the terms of the defendant's original sentence.  The Commonwealth further argues that, even if the exclusion zones increased the defendant's sentence, this was a permissible modification based on a change in circumstances.
      We conclude that the defendant's original sentence contemplated the later establishment of exclusion zones, and that, therefore, the addition of exclusion zones -- setting aside the particular scope of the exclusion zones here -- did not violate the prohibition against double jeopardy.  We also conclude, however, that the scope of the specific exclusion zones here -- covering entire cities -- impermissibly increased the severity of the defendant's sentence.  Thus, although we find no double jeopardy violation in the judge's act of adding exclusion zones, we remand for revision of the exclusion zones ordered here.
      "[D]ouble jeopardy principles prohibit the State from increasing a defendant's sentence once the defendant's reasonable expectation of finality in the imposed sentence has 'crystallized.'"  Martin v. Commonwealth, 492 Mass. 74, 78 (2023), quoting Commonwealth v. Selavka, 469 Mass. 502, 513 (2014).  Thus, once a probationary period has begun and the time to revise a sentence has passed, "a judge's authority under the common law to modify or add conditions of probation is significantly more limited."  Commonwealth v. Goodwin, 458 Mass. 11, 17 (2010).  If a defendant has complied with the conditions of probation, a judge may provide "specificity and clarity" to the original sentence in two ways.  Id.  "Where a probation condition is stated only in general terms, a judge may modify the condition to provide more detailed guidance to the defendant and probation officer as to what is required."  Id.  "Similarly, where a condition is ambiguous, the judge may modify the condition to provide the necessary clarity."  Id.  But a judge may only increase the scope of probation conditions if "there has been a 'material change in the probationer's circumstances since the time that the terms of probation were initially imposed,' and where the added or modified conditions are not so punitive as to significantly increase the severity of the original probation."  Id. at 18, quoting Buckley v. Quincy Div. of the Dist. Court Dep't, 395 Mass. 815, 818-819 n.5, 820 (1985).
      We begin by assessing the defendant's original sentence.  At the time of sentencing, the judge was focused on protecting the victim's safety.  The victim's impact statement at sentencing included an account of how the abuse by her grandfather -- committed against her at a very young age -- traumatized her.  Even after the abuse ended, the victim "started to see [her] grandfather everywhere, even in [her] own house."  She "[f]elt as if he was watching [her]."  As a result of the victim's fear of the defendant, the Commonwealth requested the defendant's sentence include GPS monitoring and "that the defendant stay away and have no contact with the victim."  The judge found the victim's account "completely credible and believable."  He imposed GPS monitoring pursuant to § 47 and, agreeing with the Commonwealth's recommendation, ordered the defendant to stay away from and have no contact with the victim and her family.
      The judge did not specify an exclusion zone at sentencing, but we conclude that the defendant's sentence contemplated that an exclusion zone or exclusion zones would be set once the defendant began his probationary term.  The judge specifically sentenced the defendant to GPS monitoring under § 47.  See Commonwealth v. Grundman, 479 Mass. 204, 207 (2018) (even though imposition of GPS condition is mandatory under § 47, defendants must receive actual notice that it will be imposed).  Under § 47, "[t]he commissioner of probation, in addition to any other conditions, shall establish defined geographic exclusion zones."  G. L. c. 265, § 47.  Thus, § 47 provides that the probation department should define the exclusion zones.  Once a GPS condition is imposed under § 47, the probation department determines the specific addresses that should be entered into the monitoring system, including the address of "the victim's residence, place of employment and school," as well as "other areas defined to minimize the probationer's contact with children."  Id.  The defendant was notified of the GPS condition during the sentencing hearing.  And the order of probation explicitly specified that he was subject to the GPS conditions of § 47, including "geographic exclusion zones established by the Commissioner of Probation."
      Implicit in the defendant's sentence under § 47, therefore, is that exclusion zones would be defined by the probation department when the GPS monitor was imposed.  The defendant received adequate notice that exclusion zones would be established where both the sentencing hearing and the order of probation contained this information.  Contrast Grundman, 479 Mass. at 206-208 (addition of GPS condition impermissible because defendant did not receive actual notice that he was subject to requirements of § 47 where announced sentence failed to include that GPS monitoring was condition of probation).  It was thus contemplated in the defendant's sentence that the probation department would later establish any exclusion zones.
      Where the judge's original order stated that the defendant was subject to GPS monitoring, including any exclusion zones to be established by the probation department, the probation condition was "stated only in general terms" and the judge's later order setting those exclusion zones "provide[d] more detailed guidance to the defendant" about the probation condition.  Goodwin, 458 Mass. at 17.  This clarification is of the kind we have previously upheld.  For example, in Commonwealth v. Delisle, 440 Mass. 137, 145 (2003), where an original probation order stated the defendant "shall participate . . . in personal counseling or therapy as ordered by the probation department," we held that the judge's later specification of a particular program was "contemplated in the original order of probation."  In contrast, in Goodwin, supra at 22-23, we held that a judge did not have authority to add GPS monitoring or exclusion zones where neither was included in the defendant's original probation conditions.  Here, the eventual establishment of exclusion zones was, like Delisle and unlike Goodwin, "contemplated in the original order of probation" because the original order informed the defendant that exclusion zones could be set by the probation department.  We conclude that the judge's addition of exclusion zones, generally, was therefore a permissible clarification of the defendant's original sentence.
      Notwithstanding our conclusion that the addition of exclusion zones was a clarification of the defendant's sentence, the exclusion zones imposed here -- covering the entire cities of Framingham and Marlborough -- were "so punitive as to significantly increase the severity of the original probation" in violation of the prohibition against double jeopardy.  Goodwin, 458 Mass. at 18.  Such broad exclusions are not implicit in § 47 or the overarching goals of probation.
      Section 47 provides that the probation department "shall establish defined geographic exclusion zones including, but not limited to, the areas in and around the victim's residence, place of employment and school and other areas defined to minimize the probationer's contact with children, if applicable."  G. L. c. 265, § 47.  The areas delineated in § 47, although not exhaustive, all relate to the victim or potential future victims and to the threat of the defendant's recidivism.  The areas delineated in § 47 are also all exclusion zones that can be set by "specific addresses."  Feliz, 481 Mass. at 695.  But an exclusion zone encompassing an entire city is effectively a "banishment" from the city, imposing significant burdens on the defendant's liberty.  See 1 N.P. Cohen, Probation and Parole § 10:10 (2d ed. 1999) (condition that orders probationer "to leave or stay outside a broad geographic region, such as a city, county, area, state, or country" is "frequently characterized as a banishment" [footnotes omitted]).  Such a banishment covers a much larger area than contemplated by the statute itself.
      Additionally, the evidence does not support that the exclusion zones around Framingham and Marlborough were tailored to the goals of probation.  "The primary goals of probation are twofold:  rehabilitation of the defendant and protection of the public from the defendant's potential recidivism."  Commonwealth v. Eldred, 480 Mass. 90, 95 (2018).  While a judge has "great latitude in imposing conditions of probation," the judge may only do so if "the condition is reasonably related to the goals of sentencing and probation" (quotation and citation omitted).  Id. at 96.  In analyzing a condition of banishment from the entire State, we previously reasoned that "[b]anishment from a large geographical area . . . struggles to serve any rehabilitative purpose" (citation omitted).  Commonwealth v. Pike, 428 Mass. 393, 404 (1998).  As in Pike, here, "[w]hatever crimes the defendant may be disposed to commit, there is no showing at all that he would be more inclined to commit them in [Framingham or Marlborough] or more likely to reform if he stayed away from [those cities]."  Id.  Moreover, while an exclusion zone would serve the goal of protecting the victim from chance encounters with the defendant, there was no evidence presented to the judge that the exclusion zones needed to be as broad as entire cities to do so.
      Thus, while the judge could permissibly clarify his original order of probation to specify exclusion zones without violating the prohibition against double jeopardy, that is not what occurred here.  Because the actual exclusion zones ordered are significantly broader than those contemplated by § 47 or the goals of probation, we cannot say these exclusion zones were implicit in the defendant's original sentence.  Rather, the defendant's banishment from the entirety of both Framingham and Marlborough constituted an additional punishment that was "so punitive as to significantly increase the severity of the original probation."  Goodwin, 458 Mass. at 18.  Accordingly, these specific exclusion zones cannot stand.  Because, as described further infra, we affirm the imposition of the defendant's GPS condition, we therefore vacate the judge's amended order of probation and remand for a revised order specifying new exclusion zones.  The exclusion zones shall be defined in a manner that follows § 47 and advances the probation's goals of rehabilitating the defendant and protecting against his recidivism.
      b.  Reasonableness of the GPS condition.  The defendant argues that the GPS condition was unreasonable as applied to him and that the judge therefore erred in denying his motion to vacate the condition.  Specifically, the defendant contends that the Commonwealth failed to demonstrate he posed a risk of reoffense and presented no evidence that he was likely to violate the terms of his probation.  In response, the Commonwealth argues that the judge properly weighed the defendant's privacy interest against the Commonwealth's interests in enforcement of the exclusion zones and in deterrence or investigation of future crimes by the defendant.  We conclude that the GPS condition was reasonable as applied to the defendant because it would strengthen exclusion zones that could and would be defined, the underlying offense was serious, and the defendant had been classified as a level two offender by SORB.
      "Although ordinarily we review a judge's decision on a motion to vacate a condition of probation for an abuse of discretion . . . we conduct an independent review where, as here, the judge's decision was based on a constitutional determination."  Commonwealth v. Roderick, 490 Mass. 669, 673 (2022).
      As discussed previously, in Feliz, 481 Mass. at 700, we held that GPS monitoring imposed pursuant to § 47 requires individualized determinations of reasonableness to be constitutional under art. 14.  On review, we must determine "[w]hether the government's interest in imposing GPS monitoring outweighs the privacy intrusion occasioned by GPS monitoring, thus constituting a reasonable search."  Id. at 701.  "[W]e evaluate the reasonableness of the search at the time it was ordered, rather than at the time it was conducted."  Roderick, 490 Mass. at 678.  Thus, we must determine whether the Commonwealth met its burden to prove the search was reasonable at the time of the motion hearing.  Id.  In doing so, we "may consider a 'constellation of factors,' including, among others, the intrusiveness of the search; the defendant's particular circumstances, such as his or her criminal convictions, past probation violations, or risk of recidivism; and the probationary purposes, if any, for which the monitoring was imposed."  Commonwealth v. Johnson, 481 Mass. 710, 719 (2019), cert. denied, 140 S. Ct. 247 (2019), quoting Feliz, supra.  "Because reasonableness depends on the totality of the circumstances, no one factor will be dispositive in every case" (quotation and citation omitted).  Feliz, supra.
      i.  The government's interest.  The Commonwealth identifies two interests in the GPS condition:  (1) protection of the public and the victim through enforcement of the exclusion zones, and (2) deterrence and investigation of future crimes.
      "We agree that the Commonwealth has a compelling interest in protecting the public by ensuring compliance with court-ordered exclusion zones."  Roderick, 490 Mass. at 677.  "Exclusion zones ensure that defendants stay away from victims, thereby protecting victims' safety by providing them with 'a safe haven'" and by "prevent[ing] further victimization of that individual" (citation omitted).  Id.  Once an exclusion zone is configured, the GPS monitoring system will alert probation department staff whenever the zone is entered by the probationer.  Feliz, 481 Mass. at 695.  The GPS condition only furthers the government's interest, however, where it is established that "an effective exclusion zone could and would be created" (emphasis added).  Roderick, supra at 678.  In Roderick, we held that it was improper for the judge to assume that an effective exclusion zone could and would be created where the Commonwealth was unable to contact the victim or determine her address by the time of the motion hearing.  Id.  We thus clarified that the Commonwealth's interest in enforcing the exclusion zone was not furthered by "simply an unsubstantiated possibility" that the Commonwealth could eventually configure a proper exclusion zone (quotation, citation, and alteration omitted).  Id. at 679.
      Here, the Commonwealth informed the judge that the victim did not want an exclusion zone around her home but instead wished to have exclusion zones set for the cities of Framingham and Marlborough.  As we discuss supra, the imposition of exclusion zones around these cities was improper.  However, unlike Roderick, the Commonwealth here sufficiently demonstrated more than "an unsubstantiated possibility" that it could establish a proper exclusion zone because the probation department knew the locations of the victim's residence, her employment, and family members she frequently visited.  And the Commonwealth demonstrated that it had every intention to configure an exclusion zone by requesting that the judge specify exclusion zones in the defendant's conditions of probation.  We conclude, as the judge below did, that "[t]he Commonwealth therefore established at the motion hearing that an effective exclusion zone could and would be created."
      Moreover, the Commonwealth demonstrated that enforcement of an exclusion zone would further its interest in protecting the victim and her family.  The defendant's abuse of the victim was significant:  the victim was around four or five years old at the time the defendant's abuse began, the defendant was acting as her caretaker, and the abuse continued over a period of several years.  At the defendant's sentencing, the victim testified about her fear of the defendant, including that "he was watching [her]."  She described her efforts, before the defendant was imprisoned, to avoid seeing him.  Even after the defendant's incarceration, the victim still indicated that she wanted to avoid the defendant, requesting the exclusion zones for the areas she frequented.  Given the seriousness of the offense and its effect on the victim, an exclusion zone would "protect[ the] victim['s] safety by providing [her] with 'a safe haven'" and by "prevent[ing] further victimization."  Roderick, 490 Mass. at 677.  In these circumstances, the GPS condition of the defendant's probation would thus further the Commonwealth's interest in protecting the public and the victim by ensuring compliance with any exclusion zones to be defined.
      The Commonwealth also demonstrated an interest in deterring and investigating future crimes.  "We have recognized that the government has a valid interest in deterrence and investigation where the Commonwealth provides sufficient evidence that a defendant poses a demonstrable risk of reoffending."  Roderick, 490 Mass. at 679.  As the Commonwealth notes, the defendant was classified as a level two sex offender by SORB, reflecting a moderate risk of reoffense.  Notwithstanding SORB's classification, the defendant argues that there was "no basis to conclude that [he] was a danger to the public and likely to reoffend."  In support of this argument, the defendant relies on his history of compliance with the terms of his probation, his status as an older man with complex medical conditions, and various studies addressing the risk of recidivism among sex offenders.  He asserts that the Commonwealth's interest here is low because, as we stated in Roderick, supra at 682-683, "[t]he government has less of an interest in monitoring a potential recidivist than a proven one."  Contrast Johnson, 481 Mass. at 719-720 (Commonwealth's interests outweighed privacy invasion where defendant had several convictions and had violated probation, demonstrating his likelihood of recidivism).
      The defendant's challenge to the Commonwealth's interest, however, misunderstands our decision in Roderick.  There, we explained that a SORB classification is the result of an individualized determination in which a defendant may present evidence like that raised by the defendant here -- including his age and medical history, as well as studies suggesting his low risk of reoffending.  See Roderick, 490 Mass. at 680.  We emphasized that, where SORB has already performed an extensive evaluation, "a judge need not reinvent the wheel by conducting an independent factual examination of the issue."  Id. at 680-681.  We further reasoned that "treating a defendant's SORB classification level . . . as sufficient evidence to establish that the defendant poses at least some risk of reoffending" was not the same as "treating the classification level as determinative of the reasonableness of the search."  Id. at 680.  Accordingly, even if not evidence that the defendant is a "proven" recidivist, id. at 683, we unequivocally held that the level two classification "was sufficient to establish that the defendant posed some moderate risk of reoffending," thereby supporting the Commonwealth's interest in deterrence and investigation of future sex offenses (emphasis added), id. at 681.  The defendant's level two classification therefore also supports the Commonwealth's interests.
      ii.  The defendant's privacy interests.  As we have repeatedly recognized, "GPS monitoring works a significant intrusion on a probationer's existing, albeit diminished, expectation of privacy."  Roderick, 490 Mass. at 675.  See Feliz, 481 Mass. at 703-705.  GPS monitoring forces the defendant to wear a device he cannot remove, "significantly burden[ing] the defendant's liberty interest in bodily autonomy and integrity."  Roderick, supra.  And the device also needs maintenance, "which at best is an inconvenience and at worst is a threat to the defendant's livelihood."  Id. at 676.  The GPS condition may be especially burdensome to the defendant here, who purports he cannot receive necessary medical services while wearing the device.
      iii.  Balancing the interests.  In Roderick, 490 Mass. at 681-682, although we ultimately reversed the denial of the defendant's motion to vacate the GPS monitoring condition, we noted:  "There is little question that the Commonwealth's interest in enforcing [an] exclusion zone around the victim's home, in conjunction with its interest in deterring and investigating future sex offenses, would have outweighed the incremental privacy intrusion occasioned by GPS monitoring in the instant case."  Had the Commonwealth been able to establish an effective exclusion zone around the victim's home in Roderick, we concluded the case would be "straightforward."  Id. at 681.  
      The Commonwealth's interests were only insufficient because it could not establish that an effective exclusion zone could or would be created.  Id. at 682-683.  In contrast, the Commonwealth here demonstrated that it could and would be able to effectively configure an exclusion zone around areas the victim lives or frequents.  Even though the privacy intrusions here are potentially more significant, we think this case is, as Roderick previewed, "straightforward."  Id. at 681.  In light of the extensive abuse suffered by the victim and the evidence that she continues to live in fear of the defendant, the Commonwealth had a significant interest in enforcing an exclusion zone to protect her from further victimization.  Combined with the defendant's level two classification by SORB, the Commonwealth's interests here outweighed the privacy invasion of GPS monitoring.  Accordingly, we hold that the probation condition requiring GPS monitoring was reasonable and thus constitutional under art. 14.  We therefore affirm the denial of the defendant's motion to vacate the GPS condition of his probation.
      c.  Procedures for Feliz defendants.  Although we affirm the judge's denial of the defendant's motion to vacate the GPS condition of his probation, we recognize that from the time the GPS monitor was placed on the defendant to the time the judge denied the defendant's motion to vacate the GPS condition, seventy-three days passed in which the defendant was subject to GPS monitoring without an individualized determination of its reasonableness as required by art. 14.  As we stated in Feliz, 481 Mass. at 690-691, the individualized determination of reasonableness must be made "prior to imposing GPS monitoring on a given defendant" (emphasis added).  Without such a hearing, mandatory, blanket GPS monitoring is unconstitutional under art. 14.  Id. at 700.
      In its amicus brief, the Committee for Public Counsel Services (CPCS) informs us that the defendant's situation is not unique.  According to CPCS, many probationers have been affixed with a GPS monitor before receiving an individualized determination of reasonableness in violation of art. 14.  CPCS also notes that Feliz hearings often do not occur until defendants request the hearings themselves.  By forcing defendants to request Feliz hearings, the burden is shifted:  it is not the Commonwealth who must prove the reasonableness of GPS monitoring before its imposition, but the defendants who must raise the issue of reasonableness while being subjected to a presumptively unconstitutional search.  Cf. Roderick, 490 Mass. at 679 (judges may not shift burden from Commonwealth to defendant by forcing defendant to move court to reconsider reasonableness of GPS monitoring where judge infers facts not yet proven by Commonwealth).  Defendants sentenced under § 47 should not have to move for a Feliz hearing and wait for a judge's order while affixed with a GPS monitor.
      We thus provide the following instructions to the probation department.  The probation department shall, within a reasonable time after the issuance of the rescript in this case, identify all individuals sentenced under § 47 and subject to GPS monitoring as a condition of their probation.  For any probationer sentenced under § 47 and already serving a probationary term with a GPS monitor affixed to his or her person, the probation department must promptly remove the GPS monitor and refrain from reattaching the monitor unless and until the probationer has received a Feliz hearing.  Removal of the GPS device must not be delayed pending the scheduling of such a hearing in the absence of a court order so providing.  For defendants sentenced under § 47 and soon to be released on probation, probation officers may not affix a GPS monitor to those defendants until a hearing has been held.  
      In either case, where the Commonwealth seeks to impose the GPS condition under § 47, the Commonwealth may move to schedule a hearing, at which the Commonwealth must establish the GPS monitoring is reasonable as to the particular defendant.  Of course, in some situations, the Commonwealth may choose to forgo a hearing altogether because it no longer desires to impose the GPS condition or because it independently determines that GPS monitoring would be unreasonable in the defendant's circumstances.  And both the Commonwealth and defendants remain free to seek other avenues of judicial relief.  Cf. Doe, Sex Offender Registry Bd. No. 76819 v. Sex Offender Registry Bd., 480 Mass. 212, 213, 222-223 (2018) (appeal following petition to single justice concerning SORB's failure to conduct hearings as required by prior court decision).
      3.  Conclusion.  In light of the foregoing, we affirm the denial of the defendant's motion to vacate the GPS condition of his probation.  However, we vacate the amended order of probation conditions and remand for revision of any exclusion zones in accordance with this opinion.
                                          
 
So ordered.
footnotes

[1] We acknowledge the amicus brief submitted by the Committee for Public Counsel Services.
          [2] Although the indictments collectively pertained to three victims, guilty verdicts were only returned on counts pertaining to one victim -- the defendant's granddaughter.
           [3] Prior to this first trial, the Commonwealth filed a nolle prosequi on one count of indecent assault and battery on a child under the age of fourteen.  Before the judge declared a mistrial, the jury found the defendant not guilty of one count of rape of a child by force.
      [4] The jury returned a verdict of not guilty on one count of rape of a child by force.  With respect to the remaining two counts of rape of a child by force, the jury could not reach verdicts, and after the judge declared a mistrial as to those counts, the Commonwealth filed a nolle prosequi.
      [5] While awaiting a decision from the judge, the defendant filed a petition with a single justice of this court under G. L. c. 211, § 3, requesting vacatur of the GPS condition.  The defendant argued that he was being subjected to a presumptively unconstitutional search during the pendency of his motion.  He withdrew the petition after the judge issued the order on the defendant's motion to vacate.